UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAKOTA ROBERTS and DAWN
MARIE HACKER,

               Plaintiffs,

    v.

SIDWELL AIR FREIGHT INC. and
DHL EXPRESS (USA) INC.,

               Defendants.

CASE NO. C21-5912 BHS

ORDER

     This matter comes before the Court on Plaintiffs Dakota Roberts and Dawn Marie Hacker's (together "Roberts") Motion for Conditional Certification and Judicial Notice and Equitable Tolling, Dkt. 30. Roberts sued Defendants Sidwell Air Freight Inc. and DHL Express (USA) Inc. arguing that they failed to pay him and similarly situated employees overtime and failed to provide paid rest breaks, in violation of federal and state law. Dkt. 1. Roberts seeks to conditionally certify a collective and to provide notice to similarly situated individuals who could opt in to be part of the collective. Dkt. 30.

# I.   BACKGROUND

Roberts worked as a courier driver for Sidwell in Washington from October 2016–February 2021. Dkt. 1, ¶ 7. DHL uses local delivery services, including Sidwell, to deliver goods to customers. *Id.* ¶¶ 24–26. Sidwell drivers assigned to work for DHL drive DHL-branded vehicles, wear DHL-branded uniforms and badges, and use DHL-issued scanners which, among other things, allows DHL to track them while en route. *Id.* ¶¶ 31, 42, 44. The drivers are also required to comply with DHL rules. *Id.* ¶¶ 48–49.

Roberts asserts that all DHL-assigned courier drivers begin their shifts early at their homes, drive first to a DHL ServicePoint, and then begin their route. *Id.* ¶¶ 51–52. He further asserts that drivers are regularly assigned to longer than ten-hour days, more than five days per week, and are required to finish their assigned routes regardless of their shift time. *Id.* ¶¶ 53–54. According to Roberts, this frequently results in drivers working more than forty hours per week without overtime pay. *Id.* ¶¶ 57, 63–80. He also asserts they are deprived of legally mandated rest and meal breaks. *Id.* ¶¶ 59–61.

Roberts sued Sidwell and DHL in December 2021 on behalf of himself and similarly situated employees. *See generally id.* He sued on behalf of a collective under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), for failure to pay overtime wages. *Id.* ¶¶ 101–113. He also sued on behalf of a class under Washington law for failure to pay overtime wages, failure to provide meal and rest breaks, and willful refusal to pay wages. *Id.* ¶¶ 114–137. He seeks damages, costs, and attorney's fees. *Id.* at 19–20.

Roberts now seeks "conditional certification" of his collective under the FLSA and Court approval of his proposed notice forms so he can notify prospective collective

1    members, allowing them a chance to opt-in to the litigation. Dkt. 30. He also asks the

2    Court to equitably toll the limitations period for opt-in plaintiffs from September 11,

3    2022—30 days after the motion was set for decision—to the date of the Court's decision.

4    *Id.* at 21.

5          DHL and Sidwell oppose conditional certification, arguing that such a mechanism

6    is not expressly permitted under the FLSA, that it is not in line with Supreme Court

7    precedent, and that this Court should instead supervise notice. Dkts. 36, 39. They also

8    argue that this Court lacks personal jurisdiction over them as to the claims of potential

9    out-of-state opt-in plaintiffs under *Bristol-Myers Squibb v. Superior Ct. of Calif.*, 137 S.

10   Ct. 1773 (2017). *Id.* They also oppose conditional certification, arguing that Roberts

11   failed to show a common pay practice among prospective opt-in plaintiffs. *Id.* DHL

12   further argues that Roberts lacks standing to assert FLSA claims against it because it

13   never employed Roberts. Dkt. 36 at 20–21. Finally, DHL and Sidwell argue that Roberts

14   has not established that equitable tolling is appropriate. Dkts. 36, 39.

15         Roberts replies that *Bristol-Myers Squibb* does not apply to FLSA collective

16   actions and therefore the Court does not lack personal jurisdiction over the claims of out-

17   of-state opt-in plaintiffs. Dkt. 42. He alternatively argues that the Court should wait to

18   rule on personal jurisdiction until out-of-state plaintiffs have opted in to avoid issuing an

19   advisory opinion. *Id.* Roberts further argues that it is too early in the case for the Court to

20   determine whether DHL and Sidwell acted as joint employers because the parties have

21   yet to engage in discovery. *Id.* Finally, he argues that equitable tolling is appropriate to

22   account for circumstances beyond the opt-in plaintiffs' control. *Id.*

## II.   DISCUSSION

### A.   Conditional Certification

Roberts correctly argues that courts in the Ninth Circuit permit certification of an FLSA collective under a two-step approach. Dkt. 30 at 14. At the first step, "'the issue is whether plaintiffs have identified other employees who are similarly situated to them, such that they are potential opt-in plaintiffs and should be given notice of the action.'" *Id.* (quoting *Bolding v. Banner Bank*, No. 17-cv-0601 RSL, 2017 WL 6406136, at *1 (W.D. Wash. Dec. 15, 2017)). After the plaintiff notifies prospective opt-in plaintiffs, the opt-in period expires, and discovery is completed, the second step requires the Court to conduct "'a more searching review.'" *Id.* (quoting *Bolding*, 2017 WL 6406136, at *1). According to Roberts, the conditional certification standard is "'lenient'" and "'usually results in certification.'" *Id.* (quoting *Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011)).

DHL and Sidwell urge the Court to instead adopt the Fifth Circuit's approach in *Swales v. KLLM Transport Servs., LLC*, 985 F.3d 430 (2021), and to oversee notice rather than conditionally certify the collective action under the two-step approach. Dkt. 36 at 14–16; Dkt. 39 at 4. They argue that this approach conforms better to the text of the FLSA and to Supreme Court precedent in *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Dkt. 36 at 13–14.

While the Ninth Circuit has never directly held that courts in this district may conditionally certify FLSA collectives under the two-step approach, it briefly discussed the approach in *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018)

("[A]lthough nothing in section 216(b) expressly compels it, it is now the near-universal practice to evaluate the propriety of the collective mechanism—in particular, plaintiffs' satisfaction of the 'similarly situated' requirement—by way of a two-step 'certification' process."). *Campbell* involved two related collective actions brought by police officers alleging that the Los Angeles Police Department had unwritten policies that discouraged reporting overtime work. *Id.* at 1099. The Ninth Circuit reviewed the district court's decertification of the collective actions and its dismissal of opt-in plaintiffs. *Id.*

The Ninth Circuit expressly declined to opine on the appropriate standard for preliminary certification. *Id.* at 1117 ("Because preliminary certification is not challenged in this case, we address only the standard the district court should apply to post-discovery decertification."). Nevertheless, its analysis is instructive and is the most relevant precedent regarding this issue in this Circuit.

The Ninth Circuit begins its analysis in *Campbell* by distinguishing collective actions from class actions and explaining that the terms "preliminary certification" and "decertification" are borrowed from class action terminology and are imprecise when applied to collective actions. *Id.* at 1100–02. Unlike in a class action, "[p]reliminary certification in the FLSA context does not produce a class with an independent legal status or join additional parties to the action." *Id.* at 1101 (internal quotations and alterations omitted). In an FLSA collective action, preliminary certification results only in the plaintiffs sending a court-approved written notice to potential opt-in plaintiffs. *Id.* Notably, "preliminary certification is neither necessary nor sufficient for the existence of a collective action." *Id.* (cleaned up).

1        The Ninth Circuit goes on to explain that every circuit that had considered the

2    issue at the time *Campbell* was decided had endorsed the two-step approach to

3    certification. *Id.* at 1110 (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir.

4    2010); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013); *White

5    v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012); *Thiessen v.

6    Gen. Electric Cap. Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001); *Morgan v. Family

7    Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008)). It acknowledged that "[t]here

8    is good reason for [district courts'] consensus" in employing the two-step approach and

9    emphasized that determining how to manage a collective action "is largely a question of

10   case management, and thus a subject of substantial judicial discretion." *Id.* (internal

11   quotation omitted).

12       Despite the Ninth Circuit's guidance in *Campbell*, DHL and Sidwell urge this

13   Court to follow the Fifth Circuit's holding in *Swales*. There, the Fifth Circuit concluded

14   that the two-step process for collective actions violates the FLSA and the Supreme

15   Court's holding in *Hoffman-La Roche*, and instructed that district courts should instead

16   oversee the notice process without conditionally certifying a collective, "dictate the

17   amount of discovery needed to determine if and when to send notice to potential opt-in

18   plaintiffs," and determine the "similarly situated" question at an earlier time—before

19   notice is sent to potential opt-in plaintiffs. *Swales*, 985 F.3d at 441–43. The Fifth Circuit

20   explains that *Hoffman-La Roche* requires such a result because it warns of alerting

21   individuals "who cannot ultimately participate in the collective" which "merely stirs up

22   litigation." *Id.* at 441. In reaching that interpretation of *Hoffman-La Roche*, the Fifth

1  Circuit cites to its own case law, *In re JPMorgan Chase & Co.*, 916, F.3d 494, 504 (5th

2  Cir. 2019), which, in turn, quotes *Hoffman-La Roche*'s dissenting opinion, 493 U.S. at

3  181 (Scalia, J. dissenting). There, Justice Scalia criticizes the majority's approach as one

4  that will "stir up" litigation. *Id.* While this Court does not doubt that the Supreme Court

5  would agree that district courts should not solicit litigation, it never held that conditional

6  certification or involvement in the notice process amounts to "stirring up" litigation.

7  　　　　The majority in *Hoffman-La Roche* does instruct that there is potential for "misuse

8  of the class device" and that misuse "may be countered by court-authorized notice." 493

9  U.S. 165, 171. That statement, however, appears to apply more to the content of the

10  communications sent to potential opt-in plaintiffs, not to whom the notice is sent. *See id.*

11  ("Both the parties and the court benefit from settling disputes about the content of the

12  notice before it is distributed."). The majority further opines that "[c]ourt intervention in

13  the notice process for case management purposes is distinguishable in form and function

14  from the solicitation of claims." *Id.* at 174.

15  　　　　*Campbell*, in contrast, relies on *Hoffman-La Roche*'s majority opinion. It explains

16  that *Hoffman-La Roche* dictates that "the means of managing a collective action—the

17  form and timing of notice, the timing of motions, the extent of discovery before

18  decertification is addressed—is largely a question of 'case management.'" *Campbell*, 903

19  F.3d at 1110 (quoting *Hoffman-La Roche*, 493 U.S. at 174). *Hoffman-La Roche* also

20  holds that district courts "must take care to avoid even the appearance of judicial

21  endorsement of the merits of the action" and "must be scrupulous to respect judicial

22  neutrality." 493 U.S. at 174. *Campbell* followed that directive by concluding that, at the

1   decertification stage, district courts must apply the summary judgment standard and

2   proceed to trial "[i]f there is a merits dispute that would survive summary judgment on

3   which the disposition of decertification also depends." 903 F.3d at 1119.

4          Despite the lack of binding guidance on the issue of conditional certification, this

5   Court concludes that the two-step approach—involving a plausibility-like standard for

6   conditional certification and a summary judgment standard for decertification—is in line

7   with both the Ninth Circuit's holding in *Campbell* and the Supreme Court's holding in

8   *Hoffman-La Roche*. Conditional certification allows the Court to monitor and approve

9   communications sent to potential opt-in plaintiffs. It also allows the Court to remain

10  neutral on the merits in having to determine only whether the plaintiffs have plausible

11  claims.

12         The Court's decision not to apply *Swales* is in line with numerous other district

13  courts both in the Ninth Circuit and across the country. *See* Dkt. 42 at 9–10 (collecting

14  district court cases in the Ninth Circuit rejecting *Swales* and applying *Campbell*); *see also*

15  Dkt. 42-1 (collecting cases from around the country rejecting *Swales* and following the

16  two-step approach). The two-step approach is followed by district courts in this circuit,

17  including this District. It is an appropriate case management method and one that this

18  Court will continue to follow absent binding law stating otherwise.

19  **B.    Personal Jurisdiction**

20         DHL and Sidwell argue that the Court lacks personal jurisdiction over them as to

21  out-of-state putative collective members' claims. Dkt. 36 at 16–20; Dkt. 39 at 4–8. The

22  parties do not dispute, and the Court agrees, that the Court lacks general personal

1   jurisdiction over both Sidwell, a company incorporated and based in Utah, and DHL, an

2   Ohio corporation based in Florida. Roberts argues, however, that the Court has specific

3   jurisdiction over the entire lawsuit as to both defendants, including for claims by potential

4   out-of-state members of the collective. Dkt. 42 at 12–15. He argues in the alternative that

5   the Court should wait to rule on jurisdiction until out-of-state drivers have filed consent

6   forms because a ruling now would amount to an advisory opinion. *Id.* at 15–16. DHL and

7   Sidwell argue that, under *Bristol-Myers Squibb* and its progeny, the Court lacks specific

8   jurisdiction over claims brought by out-of-state members of the collective. Dkt. 36 at 18–

9   20; Dkt. 39 at 6–8.

10   As an initial matter, the Court does not view a ruling on this issue as advisory. As

11   explained above, conditional certification in an FLSA collective action results in the

12   plaintiffs sending only a court-approved written notice to potential opt-in plaintiffs. In

13   order for the Court to determine to whom the plaintiff can appropriately send notice, it

14   must necessarily decide whether notifying out-of-state plaintiffs would be appropriate.

15   The Court will therefore rule on the personal jurisdiction question.

16   Specific personal jurisdiction permits a district court to exercise jurisdiction over a

17   nonresident defendant for conduct that "create[s] a substantial connection with the forum

18   State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). To prove that specific jurisdiction

19   exists in a tort-based action, a plaintiff must demonstrate that: (1) a defendant

20   purposefully directed its activities at the forum state, (2) the lawsuit arises out of or

21   relates to the defendant's forum-related activities, and (3) the exercise of jurisdiction is

22   reasonable. *Picot*, 780 F.3d at 1211. A defendant purposefully directs its conduct toward

a forum state when its actions are intended to have an effect within the state. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2003). This occurs if the defendant: "(1) commit[s] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill v. Scott Financial Co.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

In *Bristol-Myers Squibb*, plaintiffs in a mass tort action sued Bristol-Myers Squibb Co. ("BMS") in California state court, asserting state-law claims related to injuries caused by BMS's blood-thinner medication. 137 S. Ct. at 1778. Some plaintiffs were California residents, and some were not. *Id*. at 1783–84. BMS, incorporated in Delaware and headquartered in New York, sought to quash service of summons on the nonresidents' claims. *Id*. The Supreme Court held that, under "settled principles of personal jurisdiction," the California court lacked personal jurisdiction over the claims of the non-California plaintiffs, who did not claim they were injured in California and could not show an adequate link between their claims and California. *Id*. at 1781–82.

This Court held in *McNutt v. Swift Transp. Co. of Ariz., LLC*, that *Bristol-Myers Squibb* applies to FLSA collective actions. No. 18-cv-5668 BHS, 2020 WL 3819239, at *8 (W.D. Wash. July 7, 2020). The Court stands by that analysis where it determined that collective actions are more akin to mass tort actions than class actions in that each plaintiff has "party status." *Id.* (quoting *Campbell*, 903 F.3d at 1104). Roberts raises a new argument, however, based on the First Circuit's opinion in *Waters v. Day & Zimmerman NPS, Inc.*, 23 F.4th 84 (1st Cir. 2022) (*Waters II*): whether opt-in plaintiffs must satisfy the personal jurisdiction requirements of the Fourteenth Amendment or

1   whether, after the original plaintiff has served the defendant, opt-in plaintiffs need to

2   satisfy only the personal jurisdiction requirements of the Fifth Amendment. He argues

3   that this Court based its decision in *McNutt* by contrasting Ninth Circuit case law with the

4   District Court of Massachusetts's reasoning in *Waters v. Day & Zimmerman NPS, Inc.*,

5   464 F. Supp. 3d 455 (D. Mass. 2020) (*Waters I*), and that the First Circuit's reasoning in

6   *Waters II* changes that analysis.

7        While it is true that in *McNutt* this Court contrasted the District Court of

8   Massachusetts' holding in *Waters I* with the Ninth Circuit's reasoning in *Campbell*, the

9   *Waters II* decision does not change this Court's ultimate conclusion. This Court declines

10  to apply *Waters II* for three reasons articulated below. It instead follows the Third, Sixth,

11  and Eighth Circuits, as their reasoning better aligns with existing Ninth Circuit precedent

12  on personal jurisdiction and Rule 4. *See Fischer v. Fed. Express Corp.*, 42 F.4th 366 (3rd

13  Cir. 2022); *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392 (6th Cir. 2021); *Vallone v. CJS*

14  *Sols. Grp., LLC*, 9 F.4th 861 (8th Cir. 2021).

15       First, although opt-in plaintiffs are not required to re-serve defendants with the

16  complaint under Rule 4, that does not mean that the opt-in plaintiffs' claims are not

17  subject to the same personal jurisdiction requirements as the originally filed claims. That

18  would make little sense as a practical matter as opt-in plaintiffs could simply piggy-back

19  on the court's assertion of personal jurisdiction over the defendants as to the original

20  plaintiffs' claims.

21       Moreover, the "minimum contacts test, coupled with statutory authorization,

22  provides a *basis* for an exercise of jurisdiction, but service of process is the *mechanism*

1   by which the court actually acquires the power to enforce a judgment against the

2   defendant's person or property." *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007)

3   (cleaned up). Thus, when the original plaintiff serves the defendant, the court acquires the

4   power to enforce a judgment against the defendant. This does not mean that the court has

5   the power to enforce a judgment against the defendant for *any* claim. Instead, the court

6   may do so only for any claims that arise out of or relate to the defendant's minimum

7   contacts with the forum state. As aptly explained by the Third Circuit in *Fischer*, after the

8   original plaintiff properly serves the defendant under Rule 4, the

> defendant is subject to the jurisdiction of the state's courts only with regard
> to those claims that arise out of or relate to the defendant's minimum
> contacts with the state . . . . For this reason, if an additional plaintiff seeks
> to join the suit bringing her own claims, or if the original plaintiff seeks
> to add or amend claims, there is no need to serve the defendant again as long
> as the new claims arise out of or relate to the defendant's minimum
> contacts with the forum state, because the defendant would already be
> subject to the jurisdiction of the court with respect to those claims.

13   42 F.4th at 384.

14       Second, no general federal long arm statute exists,[1] *Ross*, 504 F.3d at 1138, and

15   Rule 4(k) governs personal jurisdiction in federal court," *Will Co., Ltd. v. Lee*, 47 F.4th

16   917, 921 (9th Cir. 2022). While Congress has expressly provided that a court can exercise

17   nationwide personal jurisdiction over a defendant if a statute provides for nationwide, or

18   worldwide, service, it has not authorized nationwide personal jurisdiction for *all* federal

---

[1] Courts often refer to Fed. R. Civ. P. 4(k)(2) as the "federal long arm statute." *See Will Co., Ltd. v. Lee*, 47 F.4th 917, 921 (9th Cir. 2022). That rule authorizes a court to exercise personal jurisdiction over a properly served defendant when "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2).

statutes. *See* Fed. R. Civ. P. 4(k)(1)(C). Specifically, Congress has authorized nationwide service, and thereby nationwide personal jurisdiction, in statutes such as the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1965(d)), the Sherman Act (15 U.S.C. § 5), and the Securities Exchange Act (15 U.S.C. § 78aa(a)), among others. *See Canaday*, 9 F.4th at 398–99 (compiling statutes).

In contrast, Congress expressly did not provide for nationwide service in the FLSA and reading in such a provision would violate Congress's intent. *See Canaday*, 9 F.4th at 399. The Sixth Circuit summarizes the issue well:

> While the FLSA shows no reticence in setting nationwide labor standards, it does not establish nationwide service of process. That silence rings loudly when juxtaposed with the many other instances in which Congress included nationwide service of process provisions in laws enacted before and after the FLSA's passage in 1938. What indeed would be the point of these provisions if Civil Rule 4(k) already allowed jurisdiction and service? Because "Congress knows how to authorize nationwide service of process when it wants to provide for it," the absence of express language in the statute "argues forcefully that such authorization was not its intention."

*Id.* (quoting *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 106 (1987)).

Third, the Ninth Circuit has indicated that it does not buy into the "abstract theory of sovereignty" articulated by the First Circuit in *Waters*. *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1416 (9th Cir. 1989). It rejects that theory by referencing *Omni*, explaining that that "Supreme Court decision implies that a national service provision is a necessary prerequisite for a court even to consider a national contacts approach." *Go-Video*, 885 F.2d at 1416 (citing *Omni*, 484 U.S. at 102–103 and n.5).

1    For these reasons, the Court declines to stray from its holding in *McNutt*. *Bristol-*

2  *Myers Squibb* applies to FLSA collective actions thus the Court must have personal

3  jurisdiction over the defendants as to each plaintiff's claims against them. Potential opt-in

4  plaintiffs who worked for DHL and Sidwell outside of Washington do not have claims

5  "related to" Defendants' contacts with this state. Therefore, the Court will not grant

6  conditional certification as to that group of opt-in plaintiffs.

7  **C.    Standing**

8    DHL argues that Roberts lacks standing to assert a collective action against it

9  because "(1) DHL did not employ Plaintiffs; and (2) DHL is not a joint employer with

10  Sidwell." Dkt. 36 at 20–21. Roberts argues that it is inappropriate at this stage, before the

11  parties have engaged in discovery, to determine whether DHL and Sidwell acted as joint

12  employers. Dkt. 42 at 16–18.

13    The Court agrees with Roberts. It is too early in this litigation to make a final

14  determination on whether DHL and Sidwell acted as joint employers. *See Douglas v.*

15  *Xerox Bus. Servs., LLC*, No. 12-cv-1798 JCC, 2015 WL 12930486, at *2 (collecting

16  cases) ("[T]he Court finds that the notice stage of this FLSA collective action, before

17  complete discovery has been conducted, is not the appropriate time to resolve the merits

18  of the disputed 'joint employer' issue."). Roberts has plausibly alleged that DHL and

19  Sidwell are joint employers. For example, he claims that Sidwell employees working for

20  DHL wear DHL-branded gear, drive DHL-branded trucks, follow DHL policies, and use

21  DHL scanners. Dkt. 1, ¶¶ 31, 42, 44. These allegations are sufficient at this stage to

22  justify conditional certification.

**D.    "Similarly Situated"**

DHL and Sidwell argue that Roberts fails to present evidence that he and other drivers were similarly situated. Dkt. 36 at 21–23; Dkt. 39 at 8–12. Specifically, they argue that Roberts failed to show that he has any personal knowledge of "a common practice of paying drivers day rates that result in unpaid overtime wages," or "evidence of other individuals' work conditions or methods of pay to demonstrate a common pay practice." Dkt. 36 at 22. They emphasize that Roberts did not provide any information regarding "out-of-state workers' job duties, work schedules or hours, compensation structure, or pay policies." *Id.* They argue that, in the alternative, if the Court chooses to conditionally certify the collective action, it should limit the collective to the locations where Roberts and Hacker worked. *Id.* at 23.

Roberts argues that he has plausibly alleged a common pay practice violative of the FLSA, citing to his complaint, declarations, and attached evidence. Dkt. 42 at 18–19. He specifically points out that he attached job postings that show Sidwell offered drivers the same pay policy throughout the country. *Id.* at 18. He argues that his allegations and evidence are sufficient to meet the lenient standard for conditional certification. *Id.* at 19.

Under the FLSA, a plaintiff may bring a collective action on behalf of herself and other "similarly situated" employees. 29 U.S.C. § 216(b). "It is evident from the statute that workers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing." *Campbell*, 903 F.3d at 1100. The FLSA does not define "similarly situated" or set standards for evaluating "the propriety of a collective proceeding." *Id*. Courts have

1    developed a two-step process "to evaluate the propriety of the collective mechanism—in

2    particular, plaintiff's satisfaction of the 'similarly situated' requirement—by way of a

3    two-step 'certification' process." *Id.* (citing 1 McLaughlin on Class Actions § 2:16 (14th

4    ed. 2017)).

5         As this process most often functions, plaintiffs will, at some point around
     the pleading stage, move for 'preliminary certification' of the collective

6         action, contending that they have at least facially satisfied the 'similarly
     situated' requirement. *See* 1 McLaughlin on Class Actions §2:16. Later,

7         after the necessary discovery is complete, defendants will move for
     "decertification" of the collective action on the theory that the plaintiffs'

8         status as "similarly situated" was not borne out by the fully developed
     record. *Id.*

9    *Id.*

10

11         Preliminary certification under the FLSA is not an affirmative gatekeeping

12    decision by the district court—it "does not 'produce a class with an independent legal

13    status[] or join additional parties to the action.'" *Id.* (quoting *Genesis Healthcare Corp. v.*

14    *Symczyk*, 569 U.S. 66, 75 (2013)). "'The sole consequence' of a successful motion for

15    preliminary certification is 'the sending of court-approved written notice' to workers who

16    may wish to join the litigation as individuals." *Id.* (quoting *Genesis*, 569 U.S. at 75).

17         At the preliminary certification stage, the district court typically considers the

18    pleadings, which "may sometimes be supplemented by declarations or limited other

19    evidence." *Id.* at 1109 (citing *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or.

20    2002)).

21         The level of consideration is "lenient," *Camesi v. Univ. of Pittsburgh Med.*
     *Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013); *Anderson v. Cagle's, Inc.*, 488 F.3d

22         945, 953 (11th Cir. 2007)—sometimes articulated as requiring "substantial
     allegations," sometimes as turning on a "reasonable basis," but in any event

loosely akin to a plausibility standard, commensurate with the stage of the proceedings.

*Id.* (citing, inter alia, *Halle v. W. Penn. Allegheny Health Sys., Inc.*, 842 F.3d 215, 224 (3d Cir. 2016)). The Third Circuit explains that conditional certification requires "a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224. "The 'similarly situated' standard at this phase is fairly lenient and typically results in certification." *Rozeboom*, 2018 WL 2266692, at *2 (citation omitted). Denial of preliminary certification may be with or without prejudice. *Campbell*, 903 F.3d at 1109 (citations omitted). The standard for conditional certification is loosely akin to a plausibility standard." *Id.*

The second step occurs after discovery is complete, when the employer "can move for 'decertification' of the collective action for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point." *Id.* (citing 1 McLaughlin on Class Actions § 2:16; 7B Fed. Prac. & Proc. Civ. § 1807). The Ninth Circuit emphasized that, in considering the second step, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117. "The district court may be able to decertify where conditions make the collective mechanism truly infeasible, but it cannot reject the party plaintiffs' choice to proceed collectively based on its perception of likely inconvenience." *Id.* To the extent a motion for post-discovery decertification overlaps

1   with the merits, the standard is effectively summary judgment, though like in a summary

2   judgment motion, the district court must leave disputes of fact to the factfinder. *Id*. at

3   1119. The second step is not currently before the Court.

4       At the first stage, in determining whether potential opt-in plaintiffs are similarly

5   situated in FLSA collective actions involving overtime pay claims, courts in this circuit

6   frequently look at whether the opt-in plaintiffs have similar job duties and pay structures.

7   *See, e.g.*, *Shaia v. Harvest Management Sub LLC*, 306 F.R.D. 268, 273–75 (N.D. Cal.

8   2015) (concluding that plaintiffs were similarly situated because they provided sufficient

9   evidence in the form of declarations, affidavits, and job descriptions to show they had

10  similar job duties); *McNutt*, 2020 WL 3819239, at *6 (concluding that plaintiffs were

11  similarly situated because they submitted evidence that they "have similar job

12  descriptions and are subject to the same or similar compensation policies"); *but see, e.g.*,

13  *Bunyan v. Spectrum Brands, Inc.*, No. 07-CV-0089, 2008 WL 2959932, at * (S.D. Ill.

14  July 31, 2008) (concluding that job descriptions alone were not enough to plausibly

15  allege plaintiffs were similarly situated because defendants offered evidence that there

16  were significant differences in the individual employees' work). In *Campbell*, the Ninth

17  Circuit noted that credible allegations of an employer-wide policy discouraging the

18  reporting of overtime "should suffice to make the [plaintiffs] similarly situated, as

19  required to make a collective action." *Campbell*, 903 F.3d at 1102 (citing 29 U.S.C. §

20  216(b)).

21      Because the Court has already ruled that it lacks personal jurisdiction over DHL

22  and Sidwell as to the out-of-state opt-in plaintiffs' claims, the Court examines only

whether Roberts has met his burden to allege that opt-in plaintiffs in Washington are similarly situated to him. Roberts has plausibly alleged, and provided support for his argument, that other Sidwell drivers used by DHL are similarly situated. He made credible allegations in both his complaint, his motion, and in supporting declarations that all Sidwell employees are subject to the same working conditions, have the same job descriptions, and are similarly expected to complete all routes for a daily wage, regardless of how long it takes. Those allegations are supported by job listings which show a *daily* rate of pay, rather than an hourly rate, and which do not suggest any overtime wages are available. *See, e.g.*, Dkt. 31-5 at 8.

The Court therefore GRANTS Roberts' motion for conditional certification as to potential opt-in plaintiffs who were employed by DHL and Sidwell in Washington.

**E.    Proposed Notice Forms**

DHL and Sidwell "request that the Court provide [them] with an opportunity to confer with Plaintiffs and submit agreed-upon documents and distribution processes for the Court's approval." Dkt. 36 at 24; Dkt. 39 at 12. They argue that they have not had an opportunity to confer with Roberts on the "form, substance, or method of notice." *Id.* Roberts argues that his proposed notice plan is appropriate. Dkt. 42 at 19. He requests that, if the Court grants DHL and Sidwell's request to meet and confer regarding notice, the Court toll the limitations period during that process. *Id.*

The Court agrees with DHL and Sidwell that they should have an opportunity to meet and confer with Roberts regarding notice. Such a meeting benefits both the parties and the Court. *See Hoffman-La Roche*, 493 U.S. at 171 ("Both the parties and the court

1  benefit from settling disputes about the content of the notice before it is distributed.").

2  Therefore, the parties are directed to meet and confer within thirty (30) days of this Order

3  and to draft a stipulated notice form. To the extent the parties cannot agree, they shall

4  submit to the Court a joint status report by December 16, 2022, explaining what the

5  parties disagree on and each party's suggestion for resolution.

6  **F.      Equitable Tolling**

7        Roberts also moves the Court to "toll the statute of limitations for all opt-in

8  plaintiffs from September 11, 2022—thirty days after the consideration date of this

9  motion—to the date of the Court's decision." Dkt. 30 at 21. He argues equitable tolling is

10  warranted to account for scheduling and procedural delays beyond the control of potential

11  collective members. *Id.* DHL and Sidwell argue that equitable tolling would be

12  inappropriate because it would amount to an advisory opinion and there is no "wrongful

13  conduct" or "extraordinary circumstances" warranting equitable tolling in this case. Dkt.

14  36 at 27–28; Dkt. 39 at 14. Roberts argues that the length of time it takes for the court to

15  rule on a conditional certification motion can amount to an "extraordinary circumstance"

16  warranting equitable tolling. Dkt. 42 at 24–25.

17        The Court does not agree that this is an advisory opinion for the same reasons

18  expanded upon in its discussion on personal jurisdiction. Nevertheless, it concludes that

19  equitable tolling is not warranted. "Equitable tolling applies when the plaintiff is

20  prevented from asserting a claim by wrongful conduct on the part of the defendant, or

21  when extraordinary circumstances beyond the plaintiff's control *made it impossible to file*

22  *a claim on time.*" *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) (emphasis added).

1     In *McNutt*, this Court granted equitable tolling, concluding that "the period [of

2 delay] attributable to the Court represent[ed] a substantial delay beyond Plaintiffs'

3 control." 2020 WL 3819239, at *10. While the arguments presented here and in *McNutt*

4 are largely the same, in *McNutt* the Court did not engage in an analysis of Judge Robart's

5 decision in *Bazzell v. Body Contour Centers, LLC*, No. 16-cv-0202 JLR, 2016 WL

6 3655274, at *9 (W.D. Wash. July 8, 2016). In *Bazzell*, Judge Robart concluded that the

7 plaintiffs had failed to present any "evidence that any potential plaintiff's right to opt in

8 or file his or her *own suit* for an alleged FLSA violation ha[d] been abridged in any way

9 that would warrant extension of the . . . limitations period." *Id.* (emphasis added). That

10 holding is in line with *Stoll* in that the Court's delay did not make it impossible for opt-in

11 plaintiffs to file their own suit on time. *See Stoll*, 165 F.3d at 1242. Thus, the Court's

12 delay does not amount to an extraordinary circumstance.

13     Roberts' request for equitable tolling is DENIED. Nevertheless, this ruling shall

14 not prevent any opt-in plaintiff from raising an equitable tolling argument based on their

15 individual circumstances.

16                                    **III.  ORDER**

17     Therefore, it is hereby **ORDERED** that Plaintiffs Dakota Roberts and Dawn

18 Marie Hacker's Motion for Conditional Certification is **GRANTED** as to Washington

19 opt-in plaintiffs and **DENIED** as to out-of-state plaintiffs. Roberts and Hacker's Motion

20 for Equitable Tolling is **DENIED**. Their Motion for Judicial Notice is **DENIED without**

21 **prejudice** and the parties are directed to **MEET AND CONFER** within thirty (30) days

22 of this Order as to the notice issue. To the extent there are outstanding disagreements

1 | regarding notice, the parties shall submit a **JOINT STATUS REPORT** on the issues by

2 | **December 16, 2022**.

3 |     Dated this 15th day of November, 2022.

BENJAMIN H. SETTLE
United States District Judge