UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAKOTA ROBERTS; and DAWN MARIE HACKER,<br><br>                Plaintiffs,<br>    v.<br><br>SIDWELL AIR FREIGHT, INC.; and DHL EXPRESS (USA), INC.<br><br>                Defendants. | CASE NO. C21-5912 BHS<br><br>ORDER |

This matter comes before the Court on the parties' Joint Reports Regarding Notice, Dkts. 44 and 45.

Plaintiffs Dakota Roberts and Dawn Marie Hacker (collectively "Roberts") sued Defendants Sidwell Air Freight Inc., and DHL Express (USA), Inc., arguing that they failed to pay them and similarly situated employees overtime wages and failed to provide paid rest breaks, in violation of federal and state law. Dkt. 1. The Court granted Roberts' motion for conditional certification, Dkt. 30, and ordered the parties to meet and confer to attempt to resolve their dispute regarding notice. Dkt. 43.

The parties have agreed on some issues regarding notice, including the form and language of the Opt-In Consent Form, Dkt. 44-1, and certain provisions of the notice administration process. *See* Dkt. 44. The parties disagree, however, on various aspects of the notice administration process and notice language and have submitted a joint report explaining their respective positions. *See* Dkt. 45. Each disputed issue is addressed below.

"[B]ecause the FLSA is a remedial statute, it must be interpreted broadly." *Lambert v. Ackerly*, 180 F.3d 997, 1003 (9th Cir. 1999). The Court considers the FLSA's broad, remedial purpose in addressing each of the parties' disputed issues.

**A.     The limitations period for the conditionally certified collective is three years.**

Roberts argues that the appropriate limitations period is three years because he has adequately alleged willful violations of the Fair Labor Standards Act ("FLSA"). Dkt. 45 at 2. Sidwell and DHL argue that the appropriate limitations period is two years because Roberts' "bare allegations of willfulness" are insufficient to extend the limitations period beyond the default two years. *Id.* at 3.

The FLSA provides that an action for unpaid overtime compensation "may be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). An employer "willfully" violates the FLSA if it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). At this stage, courts frequently permit plaintiffs to proceed with a three-year limitations

period if they assert a plausible claim that the defendant's actions were willful. *See, e.g.*, *Smith v. Akal Sec. Inc.*, No. CV-18-01117-PHX-SMB, 2019 WL 1932117, at *4; *see also Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 163 (4th Cir. 1992) (concluding the determination of willfulness was a jury question). This aligns with the plausibility standard that is generally applied at the conditional certification stage. *See* Dkt. 43 at 16–17 (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018)).

Roberts has plausibly alleged that Sidwell and DHL acted willfully. He explains that employees are given both a "Daily Wage" rate and a "Daily Wage Overtime" rate, however they are always awarded a flat rate of pay. *See* Dkt. 1, ¶¶ 73–76. This suggests Defendants were aware they were required to pay overtime wages and failed to. Moreover, Roberts asserts that Sidwell and DHL acted willfully because they (1) knew "or absent their own recklessness should have known" that their drivers were entitled to overtime premiums; and (2) failed to pay those premiums. *Id.* ¶¶ 81–86.

Roberts has plausibly alleged willfulness at this stage and the Court will therefore apply a three-year limitations period for notice purposes. To the extent Roberts fails to later prove willfulness, Defendants may renew their challenge to the three-year limitations period.

**B.      Each opt-in plaintiff has an individual limitations period.**

Roberts argues that the collective period should be calculated from the Court's order granting conditional certification. Dkt. 45 at 3. If this were the case, the collective period would commence on August 26, 2019—three years before conditional certification on November 15, 2022, plus 81 days of agreed tolling. *Id.* Sidwell and DHL

ORDER - 3

argue that the collective period should be calculated from the Court's approval of notice. *Id.*

Neither position seems to be correct. Under the FLSA, a cause of action must be "commenced" within two years after the cause of action accrued, or, if the violation was willful, within three years. 29 U.S.C. § 255(a). An action is deemed "commenced" for the named plaintiff when he files his complaint. 29 U.S.C. § 256(a). For an opt-in plaintiff, however, an action is deemed "commenced" when the individual files a written consent to become a party plaintiff. 29 U.S.C. § 256(b).

Roberts may send notice to similarly situated employees who worked for Sidwell up to three years, plus 81 days, prior to this order approving notice. Nevertheless, each opt-in plaintiff will need to comply with their own individual limitations period based on when they were employed by Sidwell.

**C.     Sidwell shall provide potential opt-in plaintiffs' telephone numbers but need not provide the last four digits of their Social Security numbers.**

Roberts argues that he needs potential collective members' telephone numbers and the last four digits of their Social Security numbers for skip-tracing purposes "to ensure the notice administrator has the most updated contact information for the Collective." Dkt. 45 at 4. He assures the Court that the information "will be sent directly to the notice administrator—not Plaintiffs or Plaintiffs' counsel." *Id.* Sidwell argues that it is inappropriate to provide phone numbers and Social Security numbers because it is intrusive and could lead to possible identity theft or security issues. *Id.* DHL points out it

does not have access to such information and therefore should not be ordered to provide it. *Id.* It agrees with Sidwell, however, that the request is inappropriate. *Id.*

The majority of courts in this circuit seem to agree that production of potential plaintiffs' phone numbers is appropriate. *See, e.g.*, *Gilbert v. Citigroup, Inc.*, No. 08-0385 SC, 2009 WL 424320, at *6 (N.D. Cal. Feb. 18, 2009); *Shoults v. G4S Secure Sols. (USA) Inc.*, No. CV-19-02408-PHX-GMS, 2020 WL 8674000, at *4 (D. Ariz. July 31, 2020); *Goudie v. Cable Commc'ns, Inc.*, No. 08-CV-507-AC, 2008 WL 4628394, at *9 (D. Or. Oct. 14, 2008). *But see Misra v. Decision One Mortg. Co., LLC*, 673 F. Supp. 2d 987, 999 (C.D. Cal. 2008); *Villarreal v. Caremark LLC*, 66 F. Supp. 3d 1184, 1196 (D. Ariz. 2014). The same is not true for social security numbers. *See, e.g.*, *Gilbert*, 2009 WL 424320, at *6; *Goudie*, 2008 WL 4628394, at *9; *Misra*, 673 F. Supp. 2d at 999; *Villarreal*, 66 F. Supp. 3d at 1196.

While there is little guidance in this district, the general practice appears to be to provide either social security numbers or phone numbers, but not both. *See Thomas v. Kellogg*, No. 13-5136 RBL, 2014 WL 12940040, at *1 (W.D. Wash. Jan. 14, 2014) (providing phone numbers, but not Social Security numbers); *Carlson v. United Nat. Foods, Inc.*, No. 20-cv-5476 JCC, 2021 WL 3616786, at *5 (W.D. Wash. Aug. 14, 2021) (providing the last four digits of Social Security numbers, but not phone numbers); *Randall v. Integrated Commc'n Serv., Inc.*, No. 20-cv-5438 JLR, 2021 WL 2328373, at *6 (W.D. Wash. June 8, 2021) (providing phone numbers, but not Social Security numbers).

Producing phone numbers for skip-tracing purposes is in line with the FLSA's "broad remedial purposes." *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 776 (S.D. Tex. 2015). Social Security numbers, however, are unnecessary and overly intrusive at this point. If Roberts is unable to identify class members with the information provided, he may present a future argument regarding why Social Security numbers are necessary in this case.

Sidwell is therefore ordered to produce potential plaintiffs' phone numbers.

**D.     Roberts may distribute the notice via email along with regular mail.**

Roberts argues that he should be permitted to distribute service via email along with regular mail because postal mail has become increasingly slow and unreliable and because email is many peoples' primary point of contact. Dkt. 45 at 5. Sidwell and DHL argue that first class mail is sufficient and is considered the "best notice practicable." *Id.* at 5–6 (quoting *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 765 (W.D. Tenn. 2011)).

Courts in this district, and circuit, routinely approve email notice. *See, e.g.*, *Bazzell v. Body Contour Centers, LLC*, No. 16-cv-0202 JLR, 2016 Wl 3655274, at *7 (W.D. Wash. July 8, 2016) ("Email is no longer novel but a routine and critical form of communication."); *Kim v. U.S. Bancorp*, No. 20-cv-0032 RSL; 2021 WL 3665840, at *3 (W.D. Wash. Aug. 18, 2021); *Bolding v. Banner Bank*, No. 17-cv-0601 RSL, 2017 WL 6406136, at *3 (W.D. Wash. Dec. 15, 2017); *Paunovic v. OBI Seafoods LLC*, No. 21-cv-0884 MJP, 2022 WL 898559, at *5 (W.D. Wash. Mar. 28, 2022).

The Court agrees that email notice is appropriate and serves as many peoples' primary point of contact. It is also in line with the FLSA's "broad remedial purposes." *Jones*, 149 F. Supp. at 776. Roberts is permitted to send notice via first class mail and email.

**E.     Roberts shall be permitted to send a reminder notice.**

Roberts argues that sending a reminder notice is appropriate and advances the goals of the FLSA. Dkt. 45 at 6. Sidwell and DHL argue that there is no need for a reminder notice and that "such communications are prone to abuse." *Id.*

Courts in this district, and circuit, often permit reminder notices. *See, e.g.*, *Randall* 2021 WL 2328373, at *5; *Paunovic*, 2022 WL 898559, at *6; *Carlson*, 2021 WL 3616786, at *5.

The Court agrees with Roberts that such a reminder is helpful and is appropriate in this case. The parties shall mutually agree on a reminder notice to be sent to potential plaintiffs before the opt-in period expires.

**F.     The notice need not inform potential plaintiffs about the possibility for costs to be awarded to Defendants.**

Sidwell and DHL argue that potential plaintiffs should be adequately informed that they may be responsible for taxable defense costs if DHL or Sidwell prevail. Dkt. 45 at 8–9. Roberts argues that Defendants seek to inform potential plaintiffs about costs only to scare them and that the chances of an award of costs against potential opt-in plaintiffs "are low to non-existent." *Id.* at 6–8. He further argues that the inclusion of cost language can have a chilling effect on potential plaintiffs. *Id.*

1    This issue was thoroughly analyzed by a court in this district in *Randall*, 2021 WL
2    2328373, at *4. The *Randall* court pointed out that warnings regarding attorneys' fees
3    and costs can have a chilling effect on opt-in plaintiffs, which is concerning given the
4    "remote chance that putative class members would be liable for attorneys' fees and costs
5    in a FLSA action." *Id.* (collecting cases).
6    In line with "the FLSA's goal of fully enforcing statutory rights where opt-in
7    plaintiffs are often low-wage workers," the Court agrees with the *Randall* court that the
8    potential chilling effect of these warnings, paired with the unlikelihood of potential
9    plaintiffs being held responsible for costs, outweighs the benefit of such information.
10   2021 WL 2328373, at *4. The notice need not contain information about the potential for
11   costs to be awarded to Defendants.

12   **G.    Roberts' language regarding Plaintiffs' counsel's potential fee is sufficient.**

13   Roberts argues that the language he has already included regarding potential costs
14   awarded to Plaintiffs' counsel is sufficient and that it would be impossible to provide a
15   specific amount that Plaintiffs' counsel may recover at this time. Dkt. 45 at 9. Sidwell
16   argues that "the terms of the agreement between the employee and the Plaintiff's counsel
17   is vague to the point of being meaningless." *Id.* It argues that the language does not
18   provide potential plaintiffs with adequate notice of what they may actually recover. *Id.* at
19   9–10. Sidwell also takes issue with this statement in Roberts' proposed language: "You
20   will not have to pay anything to the Plaintiffs' attorneys out of your own pocket." *Id.* at
21   10. It argues that the statement is inaccurate. *Id.* DHL takes no position on the issue. *Id.*
22

The Court agrees with Roberts that his language is sufficient. It is impossible at this point to determine what fee Plaintiffs' counsel will be awarded if Roberts prevails, especially because the Court is tasked with determining a reasonable fee at the end of litigation. *See Gary v. Carbon Cycle Ariz. LLC*, 398 F. Supp. 3d 468 (D. Ariz. 2019). Further, Sidwell does not suggest any alternative language that would better explain counsel's potential fees.

As for Sidwell's concern with Roberts' proposed language: "You will not have to pay anything to the Plaintiffs' attorneys out of your own pocket." The Court again agrees with Roberts that this is an accurate statement. In the same paragraph, potential plaintiffs are already informed that counsel's fee could be deducted from the judgment or settlement. It is accurate that opt-in plaintiffs will not have to pay Plaintiffs' counsel anything additional.

Roberts' proposed language regarding Plaintiffs' counsel's potential fees is accurate and approved.

**H.  Roberts' proposed language regarding potential plaintiffs' obligations is sufficient.**

Sidwell argues that Roberts' proposed language regarding opt-in plaintiffs' obligations is "inadequate to advise a potential Plaintiff of the possible time and expense that will inure to them in the event that they opt to join this action." Dkt. 45 at 11. Roberts argues that his proposed language provides sufficient information regarding a potential plaintiff's obligations if he or she were to join the lawsuit, including language about potentially having to sit for a deposition or having to testify. *Id.* at 10. He asserts

that he would not be opposed to adding language regarding potential plaintiffs' other obligations, including responding to written discovery, but he argues that Sidwell's proposal goes beyond what is required. *Id.* at 10–11. DHL does not take a position on this issue. *Id.* at 11.

This issue was also thoroughly analyzed in *Randall*. 2021 WL 2328373, at *4. There, the court explained that it was "mindful that certain statements may have an undue chilling effect on individuals considering opting in to the proposed collective." *Id.* (collecting cases). It noted that "[t]his is especially true when the statements involve potential obligations stemming from individualized discovery, which is uncommon in FLSA collective action suits." *Id.*; *see also Kuzich v. HomeStreet Bank*, No. CV-17-02902-PHX-GMS, 2018 WL 3872191, at *4 (D. Ariz. Aug. 15, 2018) ("[I]ndividualized discovery is rarely appropriate in FLSA collective actions, would have a chilling effect, and those who opt in will have opportunities to withdraw if unwilling to participate in discovery."). The *Randall* court denied the defendant's suggested language regarding providing documents and traveling to this district. 2021 WL 2328373, at *4.

Roberts' proposed language is sufficient to put opt-in plaintiffs on notice of their potential obligations in this lawsuit. The parties shall additionally include language regarding potential plaintiffs' obligation to respond to written discovery.

**I.     Roberts' language notifying potential plaintiffs that they can retain their own counsel is sufficient.**

Sidwell and DHL argue that the notice should more prominently explain to potential plaintiffs that they may wish to retain a separate attorney and why they may

wish to do so. Dkt. 45 at 11–12. Roberts argues that his proposed notice is sufficient because it advises potential plaintiffs twice that they may consult or retain an attorney of their choice. *Id.* at 11.

Sidwell and DHL provide no authority suggesting Roberts' proposed language is insufficient. DHL's cited cases all simply state that potential plaintiffs should be informed that they have the right to retain their own attorney. *See* Dkt. 45 at 12 (citing *Limarvin v. Edo Rest. Corp.*, No. 1:11-cv-7356, 2013 WL 371571, at *2 (S.D.N.Y. Jan. 31, 2013); *Hernandez v. Immortal Rise, Inc.*, No. 1:11-cv-4360, 2012 WL 4369746, at *9 (E.D.N.Y. Sept. 24, 2012); *Soler v. G & U, Inc.*, 86 F.R.D. 524, 530 (S.D.N.Y. 1980)). Two of those cases focus on to whom potential plaintiffs should send their consent forms—the Clerk of Court or plaintiff's counsel. The parties do not address that issue and thus neither will the Court.

Roberts' proposed language adequately informs potential plaintiffs that they have the right to retain their own counsel, twice. *See* Dkt. 45-1 at 3. That language is approved.

**J.      The deadline to submit an Opt-In Consent Form will be ninety days.**

Roberts argues that a ninety-day notice period is appropriate in this case. Dkt. 45 at 12. DHL and Sidwell argue that ninety days is too long and that a sixty-day notice period is sufficient. *Id.*

"[D]istrict courts in the Ninth Circuit routinely approve 60- to 90-day opt-in periods." *Dudley v. TrueCoverage LLC*, No. CV 18-3760 PA (AGRX), 2018 WL 6431869, at *5 (C.D. Cal. Sept. 28, 2018) (collecting cases). Ninety days is a reasonable opt-in period routinely approved by courts in this district and circuit. *See Randall*, 2021

WL 2328373, at *5; *Owen v. West Travel, Inc.*, 2003 WL 25961848, at *10 (W.D. Wash. Dec. 12, 2003).

As explained above, the FLSA requires an opt-in procedure, and its goal is to fully enforce statutory rights "where opt-in plaintiffs are often low-wage workers." *Randall*, 2021 WL 2328373, at *4. Potential plaintiffs will have ninety days to opt-in to this lawsuit.

IT IS SO ORDERED.

Dated this 18th day of January, 2023.

_____
BENJAMIN H. SETTLE
United States District Judge