THE HONORABLE TIFFANY M. CARTWRIGHT

1

2

3

4

5

6          UNITED STATES DISTRICT COURT
7          WESTERN DISTRICT OF WASHINGTON

8   DAKOTA ROBERTS, DAWN MARIE HACKER,          Case No. 3:21-cv-05912-TMC
    and HEATHER MADSEN, individually and on
9   behalf of all persons similarly situated,       **PLAINTIFFS' MOTION FOR APPROVAL OF
                                                    FLSA SETTLEMENT**
10              Plaintiffs,
                                                    **NOTED FOR CONSIDERATION:**
11      v.                                          **JUNE 21, 2024**

12  SIDWELL AIR FREIGHT, INC, and DHL
13  EXPRESS (USA) INC., d/b/a DHL EXPRESS,

14              Defendants.

15

16

17

18

19

20

21

22

23

24

25

26

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ....................................................................................... 1

II.   STATEMENT OF FACTS.......................................................................... 2

      A.    Factual and procedural background .................................................. 2

      B.    The Amended Complaint ................................................................. 4

      C.    The Settlement Agreement .............................................................. 4

            1.    Certification and notice to the Potential Settlement Collective............ 4

            2.    The Settlement Fund and distribution of settlement amounts............ 5

            3.    Calculation of individual settlement amounts ...................................... 6

            4.    Scope of release......................................................................... 7

III.  AUTHORITY............................................................................................. 7

      A.    The Court should approve this FLSA settlement as a fair and reasonable
            resolution of a bona fide dispute....................................................... 7

            1.    The Settlement Agreement reflects resolution of a bona
                  fide dispute......................................................................... 8

            2.    The settlement is fair and reasonable ................................................. 9

      B.    Final certification of the Settlement Collective and the proposed
            notice are appropriate.................................................................... 13

      C.    Plaintiffs' request for service awards should be granted.............................. 14

      D.    Plaintiffs' attorneys' fees and costs are fair and reasonable ......................... 15

IV.   CONCLUSION ....................................................................................... 18

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

**TABLE OF AUTHORITIES**

2

**Page**

3

CASES

4

*Altnor v. Preferred Freezer Svcs., Inc.,*
5      197 F. Supp. 3d 746 (E.D. Pa. 2016) ............................................................... 8

6

*Bellinghausen v. Tractor Supply Co.,*
7      306 F.R.D. 245 (N.D. Cal. 2015) ................................................................... 10

8

*Bollinger v. Residential Capital, LLC,*
9      761 F. Supp. 2d 1114 (W.D. Wash. 2011) ..................................................... 9

10   *Bonnette v. Cal. Health & Welfare Agency,*
     704 F.2d 1465 (9th Cir. 1983) ...................................................................... 16
11

12   *Boyd v. Bank of Am. Corp.,*
     2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ............................................. 17
13

14   *Campbell v. City of Los Angeles,*
     903 F.3d 1090 (9th Cir. 2018) ...................................................................... 13
15

16   *Cazeau v. Tpusa, Inc.,*
     2021 WL 1688540 (D. Utah Apr. 29, 2021) ................................................ 10
17

18   *Dudley v. TrueCoverage LLC,*
     2019 WL 3099661 (C.D. Cal. Mar. 22, 2019) .................................... 10, 11, 12
19

20   *Evans v. Centurion Managed Care of Ariz. LLC,*
     —— F.Supp.3d ——, ——, 2023 WL 5095201 (D. Ariz. Aug. 9, 2023) ....................... 8
21

22   *Garcia v. San Antonio Metro. Transit Auth.,*
     469 U.S. 528 (1985) ..................................................................................... 16

23   *Genesis Healthcare Corp. v. Symczyk,*
     569 U.S. 66 (2013) ......................................................................................... 9
24

25   *Grewe v. Cobalt Mortg., Inc.,*
     2016 WL 4014114 (W.D. Wash. July 27, 2016) ........................................... 8

26

**Terrell Marshall Law Group PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Guinn v. Sugar Transp. of the Nw., Inc.*,
    2018 WL 5793432 (E.D. Cal. Nov. 2, 2018) ................................................................ 9

*Harris v. Vector Mktg. Corp.*,
    716 F. Supp. 2d 835 (N.D. Cal. 2010) .................................................................. 13

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) .................................................................. 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .................................................................. 15, 16

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) .................................................................. 12

*In re Hyundai and Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019). .................................................................. 17

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) .................................................................. 18

*In re Lithium Ion Batteries Antitrust Litig.*,
    853 F. App'x 56 (9th Cir. 2021) .................................................................. 11

*In re Media Vision Tech. Sec. Litig.*,
    913 F. Supp. 1362 (N.D. Cal. 1996) .................................................................. 18

*Irvine v. Destination Wild Dunes Mgmt.*, Inc.,
    204 F. Supp. 3d 846 (D.S.C. 2016) .................................................................. 15

*Kang v. Fyson*,
    2022 WL 6943174 (9th Cir. Oct. 12, 2022) .................................................................. 11

*Kempen v. Matheson Tri-Gas, Inc.*,
    2016 WL 4073336 (N.D. Cal. Aug. 1, 2016) .................................................................. 13, 14

*Kingston v. Int'l Bus. Machines, Inc.*,
    No. C19-1488 MJP, 2021 WL 2662219 (2021) .................................................................. 17

*Kirkwood v. Noble Food Grp., Inc.*,
    2019 WL 13259189 (W.D. Wash. Jan. 22, 2019) .................................................................. 17

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Layton v. DHL Exp. (USA), Inc.*,
    686 F.3d 1172 (11th Cir. 2012) ................................................................. 12

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) .............................................................. 7, 8

*Mills v. Electric Auto-Lite Co.*,
    396 U.S. 375, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970) ................................ 18

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ................................................................. 16

*Paredes Garcia v. Harborstone Credit Union*,
    2023 WL 7412842 (W.D. Wash. Nov. 9, 2023) ......................................... 17

*Pelletz v. Weyerhaeuser Co.*,
    592 F. Supp. 2d 1322 (W.D. Wash. 2009) ................................................ 15

*Radcliffe v. Experian Info. Solutions*,
    715 F.3d 1157 (9th Cir. 2013) ................................................................. 15

*Radcliffe v. Hernandez*,
    794 F. App'x 605 (9th Cir. 2019) ............................................................ 11

*Rodriguez v. Nike Retail Servs., Inc.*,
    2022 WL 254349 (N.D. Cal. Jan. 27, 2022) .............................................. 17

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................... 14

*Saleh v. Valbin Corp.*,
    2018 WL 6002320 (N.D. Cal. Nov. 15, 2018) ........................................... 10

*Selk v. Pioneers Mem'l Healthcare Dist.*,
    159 F. Supp. 3d 1164 (S.D. Cal. 2016) ...........................................8, 10, 15

*Seminiano v. Xyris Enter., Inc.*,
    602 F. App'x 682 (9th Cir. 2015) .............................................................. 8

*Shaw, et al. v. AMN Services, LLC, et al.*,
    No. 3:16-cv-02816 (N.D. Cal. May 31, 2019) ........................................... 17

PLAINTIFFS' MOTION FOR APPROVAL OF
FLSA SETTLEMENT– iv
CASE NO. 3:21-CV-05912-TMC

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

*Slezak v. City of Palo Alto*,
        2017 WL 2688224 (N.D. Cal. June 22, 2017).............................................. 13

2

3

*Tompkins v. Farmers Ins. Exch.*,
        2017 WL 4284114 (E.D. Pa. Sept. 27, 2017) ................................................. 9

4

*Trevino v. Gates*,
        99 F.3d 911 (9th Cir. 1996) ........................................................................ 17

5

6

*Villalpando v. Exel Direct Inc.*,
        2016 WL 7740854 (N.D. Cal. Dec. 12, 2016) ............................................... 17

7

8 **RULES**

9

Fed. Civ. R. 23 .................................................................................................... 9

10

11 **FEDERAL STATUTES**

12

29 U.S.C. § 201, et seq ....................................................................................... 2

13

29 U.S.C. § 207 ................................................................................................... 8

14

29 U.S.C.§ 216(b)......................................................................................... 1, 13

15

16 **FEDERAL REGULATIONS**

17

29 C.F.R. § 778.112 ............................................................................................ 7

18 **STATE STATUTES**

19

RCW 49.48.030 ................................................................................................. 15

20

RCW 49.52.070 ................................................................................................. 15

21

22 **OTHER AUTHORITIES**

23

2 William B. Rubenstein, Newberg on Class Actions § 15:92 (5th ed. 2018) .......................... 17

24

25

26

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

## I.    INTRODUCTION

2    Plaintiffs Dakota Roberts, Dawn Marie Hacker, and Heather Madesen have reached a

3    settlement with Defendants Sidwell Air Freight and DHL Express in this lawsuit alleging

4    violations of the Fair Labor Standards Act and Washington's wage and hour laws. The

5    settlement[1] requires Sidwell to pay $1,000,000, which covers (1) $608,673 to Settlement

6    Collective members who either previously opted in to the collective or who submit a simple

7    claim form, (2) approximately $359,077 in attorneys' fees and costs as approved by the Court,

8    (3) any court-approved service awards of up to $5,000 for each named Plaintiff, and (4)

9    administration expenses capped at $17,250. Awards to Participating Settlement Collective

10    members will be distributed proportionally based on the weeks each claimant worked for

11    Defendants, any applicable state-law claims, and Plaintiffs' analysis of Defendants' payroll and

12    timekeeping records.

13    The settlement represents a fair, reasonable, and adequate resolution of a bona fide

14    dispute between Plaintiffs and Defendants and warrants approval by this Court. Defendants'

15    records show there are approximately 1,000 members of the Settlement Collective. Forty-nine

16    individuals have already opted in. Plaintiffs project that approximately 333 additional people

17    will ultimately opt in. At that number, the average settlement check will be approximately

18    $1,500, which is meaningful relief to employees whose claims are unlikely to be pursued

19    individually.

20    Accordingly, Plaintiffs respectfully ask for an order: (1) approving the Settlement

21    Agreement; (2) certifying the Settlement Collective as a collective action for purposes of

22    settlement pursuant to 29 U.S.C.§ 216(b); (3) approving service awards in the amount of $5,000

23    for each of the three named plaintiffs; (4) approving the payment of Plaintiffs' attorneys' fees in

24    the amount of $333,333 and expenses in the amount of $25,744; (5) appointing Simpluris as

25

26    [1] A copy of the parties' Collective Action Settlement Agreement and Release is attached as Exhibit A to the Declaration of Jennifer Rust Murray (Murray Decl.). Unless otherwise indicated, capitalized terms have the same meaning as stated in the Settlement Agreement.

1  the Settlement Administrator and approving administration costs not to exceed $17,250; (6)

2  approving and authorizing the proposed Notice and Claim Form be sent to all Proposed

3  Settlement Collective Members as set forth in the Settlement Agreement; (7) granting final

4  judgment and dismissing this action; and (8) retaining jurisdiction to oversee and enforce the

5  Settlement Agreement.

6  <center>**II.    STATEMENT OF FACTS**</center>

7  **A.    Factual and procedural background**

8        On December 14, 2021, Plaintiffs Roberts and Hacker filed this lawsuit against

9  Defendants on behalf of themselves and similarly-situated delivery drivers who were paid by

10  Defendant Sidwell to perform work on behalf of Defendant DHL and did not receive appropriate

11  overtime wages, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"),

12  and Washington Minimum Wage Act, RCW 49.46.130.

13        Sidwell's drivers provide last-mile delivery services for DHL in several states including

14  Washington. Dkt. No. 77 ¶¶ 1, 15. Plaintiffs allege that these drivers are paid a flat rate per day

15  and routinely work shifts exceeding forty hours in weeks in which drivers work five or more

16  days. Plaintiffs allege that Defendants do not pay their drivers overtime compensation for hours

17  worked over forty in a workweek. *Id.* ¶¶ 78-79.

18        In addition to various procedural defenses and attacks on the propriety of any kind of

19  collective action, Sidwell and DHL counter that Sidwell's flat rates include both regular and

20  overtime amounts and that this approach satisfies the requirements of the overtime laws in

21  this context.

22        In November 2022, this Court conditionally certified a collective that included "[a]ll

23  current and former Courier Drivers or delivery drivers who were paid by Defendant Sidwell to

24  perform work on behalf of DHL in the United States," but limited the collective to work

25  performed in Washington based on Defendants' arguments about personal jurisdiction. Dkt.

26  No. 43. That collective includes drivers with wage and hour claims arising within the three-year

PLAINTIFFS' MOTION FOR APPROVAL OF
FLSA SETTLEMENT– 2
CASE NO. 3:21-CV-05912-TMC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

statute of limitations plus 81 days under the parties' tolling agreement. Dkt. No. 46 at 4. The Court conditionally certified that collective because of the similarity between the drivers' potential claims. Dkt. No. 43. In support of certification, Plaintiffs submitted evidence that drivers are paid pursuant to the same flat rate compensation policy and perform similar job duties requiring them to routinely work over 40 hours in a workweek, and that none of this varied by geographic location inside or outside of Washington. *See* Dkt. No. 31-5 (job descriptions from relevant states); Dkt. No. 31-6 ¶ 23 (Declaration of Dakota Roberts discussing nationwide practices); Dkt. No. 31-7 ¶¶ 21-22 (Declaration of Dawn Marie Hacker discussing nationwide practices).

Sidwell contended in its conditional certification opposition that its headquarters is in Utah and it does not have sufficient contacts with Washington to be subject to general jurisdiction here. Dkt. No. 39 at 4. The Court agreed, finding it did not have personal jurisdiction over the claims of employees outside of Washington. On January 26, 2023, Plaintiff Madsen filed a second FLSA suit against Defendants in the United States District Court for the District of Utah on behalf of a national FLSA collective. *Madsen v. Sidwell Air Freight, Inc., et al.*, No. 1:23-cv-00008 (D. Utah). That suit's allegations about Sidwell's policies and practices echo those in this matter. Murray Decl., Ex. B (Madsen Complaint). The *Madsen* Court conditionally certified two collectives: "all potential opt-in plaintiffs who were employed by Sidwell in Utah as against both Sidwell and DHL [and] all potential opt-in plaintiffs who were employed by Sidwell in Oregon as against Sidwell." Murray Decl., Ex. C (Madsen Conditional Certification Order) at 43, ECF 70, No. 1:23-cv-00008-JNP-JCB.

On February 27, 2024, the parties participated in a full-day mediation session before mediator Dennis Clifford. *Id.* ¶ 16. At the conclusion of the mediation, the parties agreed to resolve Plaintiffs' and Potential Settlement Collective Members' claims. *Id.* ¶ 17. Sidwell has identified approximately 1,000 Potential Settlement Collective members. *Id.* ¶ 18.

PLAINTIFFS' MOTION FOR APPROVAL OF
FLSA SETTLEMENT– 3
CASE NO. 3:21-CV-05912-TMC

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**B.      The Amended Complaint**

Plaintiffs' original complaint pleaded the same FLSA claims contained in the Amended Complaint as well as proposed class claims based on Washington state law wage and hour violations, including the same overtime claim raised under the FLSA and additional failure to pay rest and meal breaks. Dkt. No. 1 ¶¶ 101-137. Plaintiffs did not move to certify any of those state law claims. The Amended Complaint asserts FLSA overtime claims on behalf of the FLSA collective and asks the Court to take supplemental jurisdiction over the Washington state law claims of FLSA collective members who drove in Washington. Dkt. No. 77 ¶¶ 4-5. The Amended Complaint does not ask the Court to certify a separate Washington class under Federal Rule of Civil Procedure 23.

**C.      The Settlement Agreement**

1.      <u>Certification and notice to the Potential Settlement Collective</u>

The Settlement Agreement proposes the certification and service of notice upon a Potential Settlement Collective to include "all current and former delivery drivers or couriers operating vehicles weighing less than 10,000 pounds who were paid by Sidwell to deliver packages pursuant to Sidwell's agreement with DHL in the United States during the periods of the earlier of the three years prior to the filing of their Opt-In Consent Form or January 1, 2020, through February 27, 2024." SA § 7(z).

The Settlement Administrator will mail notice to every Potential Settlement Collective Member in the form attached to the Settlement Agreement. SA § 30, Ex. A. The notice informs each Potential Settlement Collective Member of their right to join the Settlement Collective and the method for calculating awards they may be entitled to receive if they choose to participate in the settlement. *Id.* In the interest of maximizing participation, Potential Collective Members will be able to submit a claim form agreeing to join the collective and participate in the settlement by fax, e-mail, mail, or via an electronic signature on a website created by the Settlement Administrator. SA §§ 30-31. Potential Settlement Collective Members will have sixty

days from the mailing of the notice to submit a claim form. SA § 7(u). Only those Potential

Settlement Collective Members who previously opted into the Washington or Utah actions or

who submit claim forms will release any claims against Defendants. SA § 7(aa)-(bb). Settlement

Collective Members who previously opted in are not required to submit a claim form to receive

a settlement award; they instead will automatically receive a payment.

       2.    <u>The Settlement Fund and distribution of settlement amounts</u>

Defendant Sidwell will pay a sum of $1,000,0000 to create a settlement fund. SA § 7(l).

In addition to paying settlement awards, the fund will be used to pay service awards totaling

$15,000 for each of the three named plaintiffs ($5,000 each); Plaintiffs' attorney's fees in the

amount of $333,333; reasonable costs in the amount of $25,744; and settlement administration

costs not to exceed $17,250. SA § 7(n). There will be no deductions to fund Defendants'

attorneys' fees and costs or Defendants' tax obligations. SA § 7(l).

The settlement fund will be funded in installment payments. The Participating

Settlement Collective Members awards are expected to be fully funded after the sixth

installment payment. To avoid any delay in payment and in order to prioritize relief for the

collective over Plaintiffs' attorneys' fees, payments to Participating Settlement Collective

Members will begin before final payment and Plaintiffs' attorneys' fees and costs will not be

distributed until after receipt of the final payment. S.A. §§ 34, 42.

The net settlement funds (plus any interest earned by the fund in the interval) will be

allocated to each member of the Settlement Collective who submits a claim form or previously

opted into this matter before mediation. SA § 35. Members will have 180 days from the date

the checks are issued to deposit them. SA § 38. When 90 days of that 180-day check-cashing

period has expired, the Settlement Administrator will mail and email a reminder letter to any

Participating Settlement Collective Members who have not yet cashed their checks to inform

them of the 180-day deadline. *Id.* During the last 60 days of the 180-day check-cashing period,

the Settlement Administrator will call each Participating Settlement Collective Member who has

1  not yet cashed their check to remind them to do so. *Id.* Any money remaining in the fund after

2  that shall be distributed to the Legal Foundation of Washington, a non-profit *cy pres* recipient

3  agreed upon by the parties. SA § 40. Funds attributable to uncashed Settlement Award checks

4  will not revert to Sidwell. *Id.*

5          3.    <u>Calculation of individual settlement amounts</u>

6        The amount of the checks will be calculated using a formula disclosed in the settlement

7  notice and detailed in the Settlement Agreement. SA § 35. The formula provides for a base

8  amount that represents the minimum of any single check ($300) as well as a share of the

9  remaining fund after that *pro rata* minimum is calculated. *Id.*

10        Participating Settlement Collective Members who worked in states where they would

11  have state law wage and hour claims in addition to FLSA claims (Washington, Oregon, New

12  Mexico, and Arizona) will receive a larger share of the settlement fund in exchange for releasing

13  those state law claims. SA §35(b)(i). Each workweek completed in a state with applicable state

14  law protections (Washington, Oregon, New Mexico, and Arizona) entitles an employee to 1.5

15  shares, and all other workweeks (in Utah and Texas) entitle an employee to 1 share. *Id.* An

16  eligible workweek is one showing four or more days worked. *Id.* So, for example, if an employee

17  worked 10 eligible workweeks in Utah in the settlement period, they would receive a check in

18  the amount of the $300 base payment plus the amount of the remainder represented by their

19  10 shares. If there were 6,000 total shares, they would receive 1/600 of the net fund after the

20  minimum payments are calculated. If the remainder was $300,000, they would receive an

21  additional $500 for a total of $800.

22        Plaintiffs developed this formula based on their analysis of Sidwell's payroll data in an

23  effort to provide settlement awards that are reasonably proportional to each employee's

24  damages. Murray Decl. ¶ 19. Based on Plaintiffs' analysis, allocation of settlement funds based

25  on weeks worked, with a modifier for employees who are releasing analogous state law claims,

26  fairly approximates each employee's share of the damages because the variation in weeks

worked accounts for a substantial proportion of all difference in the damages. *Id.* ¶ 20.

Predictably, the variation in the amount of overtime hours within any one work week is far

narrower than the variation in the total number of such weeks—after all, one can only work so

much in a single week. *Id*. Plaintiffs estimate that the average driver worked 137 hours of

overtime in the relevant period. *Id.* ¶ 21.[2]

Ultimately, forty-seven individuals opted into the Washington FLSA action as a result of

notice sent to 124 individuals (38%). Dkt. No. 61. Sidwell has identified 1,000 potential

members of the Settlement Collective. If the same opt-in ratio applies to the notices sent to the

potential members of the Settlement Collective, the final Settlement Collective would contain

380 people. At that number, the opt-ins would each be paid an average of approximately

$1,500. Plaintiffs estimate that the maximum damages each employee could recover averages

approximately $7,370, which includes both FLSA and state law damages as well as inferences

about off-the-clock hours worked by employees. *Id.* ¶ 22. Even at this highly contested top-end

figure, the recovery under this settlement would be more than 20% of the average damages. *Id.*

### 4.  Scope of release

Settlement Collective Members will release only their "wage and hour allegations and

causes of action asserted in the Operative Complaint against Sidwell and DHL." SA § 7(aa).

### III.     AUTHORITY

**A.     The Court should approve this FLSA settlement as a fair and reasonable resolution of a bona fide dispute**

The Ninth Circuit Court of Appeals has never addressed the approval of FLSA

settlements in a precedential opinion. The leading authority on FLSA settlements, followed by

many district courts in the Ninth Circuit, is the Eleventh Circuit's decision in *Lynn's Food*. *See,*

---

[2] Under the FLSA, employers are required to compensate their non-exempt employees "at a rate of not less than one and one-half times the regular rate" for all hours the employee works in excess of forty hours in any one workweek. 29 U.S.C. § 207. "If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job . . . his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked." 29 C.F.R. § 778.112.

PLAINTIFFS' MOTION FOR APPROVAL OF
FLSA SETTLEMENT– 7
CASE NO. 3:21-CV-05912-TMC

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  *e.g.*, *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016)

2  (following *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)); *see also* 1

3  McLaughlin on Class Action § 2:16 (13th ed.) (referring to *Lynn's Food* as the "leading case" on

4  the question of FLSA collective action settlements). *Lynn's Food* holds that court approval of

5  FLSA collective action settlements is required in order to avoid manipulative or collusive

6  settlements given the fraught power dynamics in the context of employee wages. *Lynn's Food*,

7  679 F.2d at 1354–55.[3]

8          When assessing an FLSA settlement under *Lynn's Food*, the Court determines "whether

9  the settlement represents a fair and reasonable resolution of a bona fide dispute." *Grewe v.*

10  *Cobalt Mortg., Inc.*, 2016 WL 4014114, at *1 (W.D. Wash. July 27, 2016) (internal citation and

11  quotation omitted). For the following reasons, the Court should approve the Settlement.

12          1.     The Settlement Agreement reflects resolution of a bona fide dispute

13          The first question under *Lynn's Food* is whether the settlement involves "issues that are

14  actually in dispute." *Grewe,* 2016 WL 4014114, at *1 (internal citation and quotation omitted).

15  "A bona fide dispute exists when there are legitimate questions about the existence and extent

16  of the defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal citation and quotation

17  omitted). In this case, there is a dispute over the existence and extent of both Defendants'

18  liability for overtime payments, which is a quintessential FLSA dispute. *See Altnor v. Preferred*

19  *Freezer Svcs., Inc.,* 197 F. Supp. 3d 746, 763 (E.D. Pa. 2016) ("[A] dispute concerning overtime

20

21

---

22  [3] Despite an unpublished decision of the Ninth Circuit stating that "FLSA claims may not be settled without approval of either the Secretary of Labor or a district court," *see Seminiano v. Xyris Enter., Inc.,* 602 F. App'x 682, 683 (9th Cir.

23  2015), some district courts have recently begun to reject the *Lynn's Food* requirement of settlement approval because of the absence of any settlement approval requirement in the language of the FLSA. *See Evans v. Centurion*

24  *Managed Care of Ariz. LLC*, —— F.Supp.3d ——, ——, 2023 WL 5095201, at *1 (D. Ariz. Aug. 9, 2023) (collecting cases joining the trend of rejecting any approval requirement). While these cases underscore the need for

25  deferential review of FLSA settlements, *Lynn's Food* remains an appropriate approach especially because the entire purpose of the FLSA is to override exploitative labor agreements that fail to meet minimum standards; permitting the same parties to privately negotiate around those requirements *en masse* without court oversight would defeat

26  the purpose of the FLSA. *Lynn's Food*, 679 F.2d at 1352-3.

1 pay owed to class members is precisely the type of dispute the FLSA is designed to address.")

2 (citation omitted).

3      Both Defendants vigorously contest their liability (and have already succeeded with

4 some of their defenses). The two years of contentious and active underlying litigation and the

5 mediation by a professional mediator both demonstrate that a bona fide dispute exists in this

6 case regarding the existence and extent of Defendants' liability for failing to properly pay

7 overtime to delivery drivers. *See Guinn v. Sugar Transp. of the Nw., Inc.*, 2018 WL 5793432, at

8 *1 (E.D. Cal. Nov. 2, 2018) (finding a bona fide dispute because the defendant "has not

9 admitted any liability, and the parties continue to disagree about who would prevail at trial");

10 *Tompkins v. Farmers Ins. Exch.*, 2017 WL 4284114, at *7 (E.D. Pa. Sept. 27, 2017) (fact that

11 defendant "asserted several defenses to Plaintiffs' claims and the parties disagree on various

12 legal issues" shows that settlement "resolves a bona fide dispute between the parties").

13      2.    The settlement is fair and reasonable

14      The next question under *Lynn's Foods* is whether the settlement is fair and reasonable.

15 Because FLSA settlements only affect those affirmatively choosing to participate, the Court's

16 review of their substantive provisions is deferential. *See Bollinger v. Residential Capital, LLC*,

17 761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011) (explaining the more "lenient" FLSA approval

18 standard that "usually results in certification").[4] The Court need only satisfy itself that the

19 employer is not using its leverage and influence to collectively settle FLSA claims at amounts no

20 reasonable attorney would recommend, either before litigation or in collusion with opposing

21 counsel more interested in earning a fee than maximizing justice for the employees. *Grewe*,

22 2016 WL 4014114, at *3 ("[T]he court's intrusion upon what is otherwise a private consensual

23 agreement negotiated between the parties to a lawsuit must be limited to the extent necessary

24 to reach a reasoned judgment that the agreement is not the product of fraud or overreaching

25

26 [4] For the same reasons, approval of FLSA settlements is a one-step process rather than the two-step process involved in the preliminary and final approval of class actions. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA.").

PLAINTIFFS' MOTION FOR APPROVAL OF
FLSA SETTLEMENT– 9
Case No. 3:21-cv-05912-TMC

1   by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is

2   fair, reasonable and adequate to all concerned.") (internal citation and quotation omitted); *see*

3   *also Cazeau v. Tpusa, Inc.,* 2021 WL 1688540, at *2 (D. Utah Apr. 29, 2021) (noting that the

4   focus of FLSA approval is ensuring that an employer does not take advantage of its employees

5   in settling their claims for wages).

6           To determine whether a settlement is fair and reasonable, courts consider the totality of

7   circumstances relevant to the settlement, including: "(1) the plaintiff's range of possible

8   recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness

9   of the litigation risks faced by the parties; (4) the scope of any release provision in the

10  settlement agreement; (5) the experience and views of counsel and the opinion of participating

11  plaintiffs; and (6) the possibility of fraud or collusion." *Dudley v. TrueCoverage LLC*, 2019 WL

12  3099661, at *2 (C.D. Cal. Mar. 22, 2019) (internal citations and quotations omitted). All of these

13  factors favor a finding of reasonableness in this case.

14          <u>The recovery offered by this settlement is substantial and fair to all members.</u>

15  Participating Collective Members will receive a payment estimated to average $1,500 that

16  arrives in months rather than years. The Court need only satisfy itself that this recovery "bears

17  some reasonable relationship to the true settlement value of the claims," and need not require

18  some "specific percentage of the maximum possible recovery." *Selk*, 159 F. Supp. 3d at 1174. In

19  this case, the potential damages are themselves highly contested. But even assuming a higher-

20  end calculation averaging $7,300 per employee, $1500 would represent a substantial recovery

21  and represents a reasonable compromise given the risks involved in further litigation. *See Saleh*

22  *v. Valbin Corp.*, 2018 WL 6002320, at *3 (N.D. Cal. Nov. 15, 2018) (approving settlement

23  awarding 18.87% of total possible recovery); *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D.

24  245, 256 (N.D. Cal. 2015) (approving a recovery ranging from 9% and 27% of the total potential

25  recovery).

26

1    Plaintiffs' proposed allocation of the settlement to Settlement Collective members

2   based on (1) workweeks completed and (2) whether the Collective member has viable state-law

3   claims in addition to FLSA claims is fair to all members. *See Kang v. Fyson*, 2022 WL 6943174, at

4   *3 (9th Cir. Oct. 12, 2022) (finding allocation based on workweeks to be "simple, efficient, and

5   reasonable."); *In re Lithium Ion Batteries Antitrust Litig.*, 853 F. App'x 56, 57 (9th Cir. 2021)

6   (approving settlement that allocated funds differently depending on state laws applicable to

7   members' claims). *See also Radcliffe v. Hernandez*, 794 F. App'x 605, 607 (9th Cir. 2019) (finding

8   "unequal distribution of settlement funds" is fair and reasonable "so long as the distribution

9   formula takes account of legitimate considerations").

10    The case is sufficiently advanced to allow a mature view of the conflict. Courts assess

11   the stage of proceedings and the extent of discovery "to ensure the parties have an adequate

12   appreciation of the merits of the case before reaching a settlement." *Dudley*, 2019 WL

13   3099661, at *3 (internal citation and quotation omitted). This settlement was achieved after

14   two years of active litigation involving extensive discovery. Murray Decl. ¶ 12. In the

15   Washington case alone, Plaintiffs have served and received responses to multiple rounds of

16   written discovery, including a total of 27 interrogatories, 5 requests for admission, and 70

17   requests for production. *Id.* ¶ 13. Defendants have produced thousands of pages in response to

18   this discovery. *Id.* ¶ 14. Prior to mediation, the parties briefed conditional certification and

19   jurisdiction in both Washington and Utah. Rodriguez Decl. ¶¶ 7-13.

20    There is no guarantee that Plaintiffs would prevail if litigation were to continue. Sidwell

21   and DHL have made a number of arguments in their defense. On top of its successful personal

22   jurisdiction arguments, Sidwell contends that its flat "day rates" include both regular and

23   overtime amounts and that a Department of Labor investigation into Sidwell's approach to

24   overtime should absolve it of any liability. Dkt. No. 25 (Answer). It also argues that there is

25   insufficient commonality among the drivers to warrant collective or class treatment. Dkt. No. 39

26   (opposition to certification). In addition to these defenses advanced by Sidwell, DHL argues that

1   it is not a joint employer of these drivers. Dkt. No. 21 ¶ 30. DHL notes that Sidwell's employees

2   sign a written acknowledgment stating that they understand they are not DHL employees and

3   cites a favorable joint employer ruling it received in the Eleventh Circuit. *Layton v. DHL Exp.*

4   *(USA), Inc.*, 686 F.3d 1172 (11th Cir. 2012). Indeed, one risk of further litigation has already

5   come to pass after the parties reached a provisional agreement to settle. On March 18, 2024,

6   the Utah court declined to find that it had general jurisdiction over DHL in Utah and declined to

7   conditionally certify a collective beyond the employees in Utah and Oregon. Murray Decl. ¶ 24.

8        The scope of release is narrow. The scope of the Settlement Collective Members'

9   release is appropriately tailored to the factual allegations asserted in the Operative Complaint

10  against Sidwell and DHL. SA § 7(aa). *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)

11  (A settlement agreement precludes future claims only where the released claim is "based on

12  the identical factual predicate as that underlying the claims in the settled class action").

13       Experienced counsel and the Named Plaintiffs support the compromise. "In determining

14  whether a settlement is fair and reasonable, the opinions of counsel should be given

15  considerable weight both because of counsel's familiarity with the litigation and previous

16  experience with cases." *Dudley*, 2019 WL 3099661, at *4 (internal citation and quotation

17  omitted). The Named Plaintiffs are represented by two highly experienced law firms who have

18  litigated wage and hour cases similar to this one. Murray Decl. ¶¶ 1-5, 9-10; Rodriguez Decl. ¶¶

19  2-6, Ex. A (Firm Resume). Based on counsels' experience and with the agreement of the Named

20  Plaintiffs, this is an excellent result in light of the inherent risks of any litigation no matter how

21  strong the case, to say nothing of the particular challenges in this case. *See In re Cardizem CD*

22  *Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003) (noting "[t]he prospect of a trial

23  necessarily involves the risk that Plaintiffs would obtain little or no recovery.").

24       There are no circumstances in this case that suggest collusion between Plaintiffs and

25  Defendants. Far from it. Litigation in the cases has been active and contentious. That this is a

26  hard-won, good faith compromise is underscored by it having been achieved as a result of

arms-length negotiations assisted by a professional mediator. *See Slezak v. City of Palo Alto*, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017) ("The likelihood of fraud or collusion is low here because the [s]ettlement was reached through arm's-length negotiations, facilitated by an impartial mediator.").

Because the settlement is fair and reasonable when examined under all the relevant factors, the Court should approve it.

**B.     Final certification of the Settlement Collective and the proposed notice are appropriate**

Although Plaintiffs have certified FLSA collectives in both the Utah and Washington actions, the collective they seek to certify for settlement purposes is broader, encompassing all relevant delivery drivers across seven states. Accordingly, although the ordinary two-step process of preliminary and final certification is not required in this settlement context, this Court should consider as part of this approval process "whether certification is appropriate" in addition to "whether the proposed settlement is substantively acceptable." *Kempen v. Matheson Tri-Gas, Inc.*, 2016 WL 4073336, at *4 (N.D. Cal. Aug. 1, 2016); *see also Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 837 (N.D. Cal. 2010) ("Even when the parties settle, the court must make some final class certification finding before approving a collective action settlement.") (internal quotation and citation omitted). In the Ninth Circuit, the standard for certification of an FLSA collective is permissive, requiring only that the members of the FLSA collective action be "similarly situated" to the Named Plaintiffs. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018) (citing 29 U.S.C. § 216(b)).

In certifying the Washington collective, this Court has already found that Plaintiffs' evidence was sufficient to show that the drivers were similarly-situated. Dkt. No. 43. That evidence applies equally to the drivers in other states, given the uniformity of the policy and the evidence presented in this case concerning payment information in job postings. *See* Dkt. No. 31-5 (job descriptions from relevant states); Dkt. No. 31-6 ¶ 23 (Declaration of Dakota

1  Roberts discussing nationwide practices); Dkt. No. 31-7 ¶¶ 21-22 (Declaration of Dawn Marie

2  Hacker discussing nationwide practices). This a sufficient basis on which to certify the

3  Settlement Class. *See Kempen*, 2016 WL 4073336, at *3–4 (certifying similar class on similar

4  facts).

5         The settlement provides for the appointment of a Settlement Administrator to provide

6  notice, track claims, and distribute the Settlement Payments. *See* SA §§29-35. The parties have

7  agreed to request the Court appoint Simpluris as the Settlement Administrator and that

8  Simpluris will complete its duties on a contract for costs not to exceed $17,250. SA §7(v)-(w).

9         The parties propose sending Notice in the form attached as Exhibit B to the Settlement

10  Agreement directly to all Potential Collective Members. SA §30. The language of the proposed

11  notice is plain and easily understood, providing neutral and objective information about the

12  nature of the settlement, including the definition of the Collective, a statement of each

13  Member's rights, the formula that will be used to calculate awards, an explanation of how to

14  join the settlement, and how to obtain more information. *See* SA Ex. A.

15        Plaintiffs respectfully request that the Court find that the Settlement Collective

16  members are for purposes of this settlement "similarly situated" and finally certify the

17  Settlement Collective pursuant to 29 U.S.C. § 216(b) for settlement purposes only. The Court

18  should also appoint Simpluris as the Settlement Administrator, the form of Notice should be

19  approved, and Simpluris should be directed to administer the Settlement in accordance with

20  the terms of the Settlement Agreement.

21  **C.    Plaintiffs' request for service awards should be granted**

22        Service awards promote the public policy of encouraging individuals to undertake the

23  responsibility of representative lawsuits, especially in contexts in which workers risk retaliation.

24  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (finding service awards

25  appropriate to compensate class representatives for work done on behalf of the class and to

26  make up for financial or reputational risk undertaken in bringing the action). They are

PLAINTIFFS' MOTION FOR APPROVAL OF
FLSA SETTLEMENT– 14
CASE NO. 3:21-CV-05912-TMC

1  commonly awarded in FLSA actions. *See, e.g., Irvine v. Destination Wild Dunes Mgmt.*, Inc., 204

2  F. Supp. 3d 846, 851 (D.S.C. 2016) (approving $5,000 to each named plaintiff in FLSA action).

3  Such an award is appropriate when the Named Plaintiffs have taken actions to protect the

4  interests of the class in proportion to the time and effort and amount of benefit to the

5  collective. *Selk*, 159 F. Supp. 3d at 1181.

6  　　　　Plaintiffs request modest awards of $5,000 each to compensate them for their

7  contributions in stepping forward to bring this case and the companion Utah case and given

8  their service and involvement assisting with complaint drafting, responding to discovery, and

9  participating in settlement negotiations leading to the substantial settlement proposed today.

10  Murray Decl. ¶ 23. This amount is in line with awards approved by this Court. *See, e.g., Pelletz v.*

11  *Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329-30 & n.9 (W.D. Wash. 2009) (approving $7,500

12  service awards and collecting decisions approving awards ranging from $5,000 to $40,000).

13  Plaintiffs' support of the settlement is independent of any service award and not conditioned

14  on the Court awarding any particular amount or any award at all. *See Radcliffe v. Experian Info.*

15  *Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013) (finding incentive award must not "corrupt the

16  settlement by undermining the adequacy of the class representatives and class counsel").

17  **D.    Plaintiffs' attorneys' fees and costs are fair and reasonable**

18  　　　　Under the FLSA and Washington law, Plaintiffs' attorneys are entitled to reasonable

19  attorneys' fees and costs to compensate them for their work in recovering unpaid wages. *See*

20  29 U.S.C. § 216(b); RCW 49.48.030; RCW 49.52.070. As with the rest of the proposed

21  settlement, the Court's role in approval is to assess the reasonableness of the fee award. *Selk*,

22  159 F. Supp. 3d at 1180 (noting that court must assess reasonableness of fee award in FLSA

23  settlement). Plaintiffs' attorneys seek an award of $333,333, a reasonable amount that

24  represents a fraction of the fees they have incurred prosecuting this case.

25  　　　　The lodestar method is appropriate for "the award of fees to ensure compensation for

26  counsel undertaking socially beneficial litigation." *In re Bluetooth Headset Prods. Liab. Litig.*,

PLAINTIFFS' MOTION FOR APPROVAL OF
FLSA SETTLEMENT– 15
CASE NO. 3:21-CV-05912-TMC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

654 F.3d 935, 941 (9th Cir. 2011). For that reason, courts evaluating FLSA settlements commonly use the lodestar approach in recognition of the remedial nature of the statute. *See, e.g.*, *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1473 (9th Cir. 1983), disapproved of on other grounds by *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985) (upholding a $100,000 attorneys' fees award for an FLSA wage recovery of $18,455).

Since the inception of this case, Plaintiffs' attorneys have worked diligently, efficiently, and effectively to serve and analyze responses to written discovery requests, synthesize and review reams of employee data, and litigate pretrial motions. Murray Decl. ¶ 12. Counsel successfully obtained preliminary certification of multiple collectives in two separate lawsuits. *Id.* ¶ 15. In all, Plaintiffs' attorneys spent more than 1,800 hours prosecuting this case on behalf of the FLSA collectives. *See* Murray Decl. ¶ 28; Rodriguez Decl. ¶ 35.

The time devoted to this case was reasonable. Plaintiffs faced a determined adversary represented by experienced counsel. As demonstrated by the descriptions of their work, Plaintiffs' attorneys worked collaboratively and efficiently to divide tasks, both within and amongst the firms. Murray Decl. ¶ 28; Rodriguez Decl. ¶¶ 41-50. Because they were working on contingency, Plaintiffs' attorneys had no incentive to bill more hours than necessary to win the case. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[L]awyers are not likely to spend unnecessary time on contingency cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee."). Plaintiffs' attorneys reviewed their billings records and omitted anything arguably clerical, duplicative, or excessive Murray Decl. ¶ 31; Rodriguez Decl. ¶ 34. Among other things, they wrote off time recorded by attorneys not primarily responsible for the case and time spent on many administrative tasks even if they were arguably non-clerical. *Id.*

After those adjustments, Plaintiffs' attorneys' current combined lodestar is $1,014,439.50, calculated at their customary billing rates. Murray Decl. ¶ 28; Rodriguez Decl. ¶

35.[5] Those rates are reasonable given that the attorneys litigating this case on behalf of

Plaintiffs have significant employment law experience and they assumed a risk in taking on this

case on contingency, investing time and resources over a period of years with no guarantee of

any recovery. Murray Decl. ¶¶ 1-5, 9, 26; Rodriguez Decl. ¶¶ 1-6, 52; *see Trevino v. Gates*, 99

F.3d 911, 924 (9th Cir. 1996) (hourly rates are assessed based on the "experience, skill and

reputation of the attorney requesting fees.").[6] The ratio between this lodestar and the fee

sought here is well within the range of reasonableness for approval in an FLSA settlement.

*Kirkwood v. Noble Food Grp., Inc.*, 2019 WL 13259189, at *1 (W.D. Wash. Jan. 22, 2019)

(approving fee that was 1.9 times the loadstar and noting cases approving rations of 3.65 and

6.85).[7] Indeed, the fee requested reflects a substantial "negative" multiplier of 0.33 on their

total lodestar incurred ($333,333 ÷ $$1,014,439.50 = 0.33). The negative multiplier results in an

average rate that is effectively $185 per hour across all timekeepers ($333,333 ÷ 1800 hours =

---

[5] The hours of Terrell Marshall Law Group are exclusively in the Washington case and reflect the firm's local Seattle rates. Berger Montague's California and Pennsylvania attorneys worked on both the Utah and Washington cases, and with collective members nationwide, and so they have applied their usual and customary rates for such work. But even if Berger Montague's lodestar is calculated using reduced local rates comparable to Terrell Marshall's, the resulting lodestar total is $643,712, still nearly double the fee provided in this settlement. Rodriguez Decl. ¶ 39.

[6] These rates have also recently been approved as reasonable. *See, e.g.*, *Paredes Garcia v. Harborstone Credit Union*, 2023 WL 7412842, at * 11 (W.D. Wash. Nov. 9, 2023) (approving attorney's fee award to Terrell Marshall based on lodestar method with hourly rates from $125 for legal assistants to $575 for founding member); *Kingston v. Int'l Bus. Machines, Inc.*, No. C19-1488 MJP, 2021 WL 2662219 (2021) (approving hourly rates for Terrell Marshall attorneys and staff ranging from $125 for legal assistants to $575 per hour for lead attorney); *Shaw, et al. v. AMN Services, LLC, et al.*, No. 3:16-cv-02816, ECF 167 (N.D. Cal. May 31, 2019) (conducting lodestar cross check and holding "[t]he Court further finds that the hourly rates of Class Counsel's co-counsel, Berger Montague PC, also are within the prevailing range of hourly rates charged by attorneys providing similar services in class action, wage-and-hour cases").

[7] The Ninth Circuit does not require district courts employing the lodestar method to perform a "crosscheck" using the percentage method. *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 571 (9th Cir. 2019). Such a requirement makes "little logical sense," *see id.* (quoting 2 William B. Rubenstein, Newberg on Class Actions § 15:92 (5th ed. 2018)), because "the lodestar method yields a fee that is presumptively reasonable." *In re Hyundai*, 926 F.3d at 571 (quotation and internal marks omitted). But even if applied here, such a cross-check shows the fee to be reasonable, since it amounts to one third of a settlement that provides substantial relief to the collective in a contingency fee case. *See Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014) (approving one-third fee in class case); *Rodriguez v. Nike Retail Servs., Inc.*, 2022 WL 254349, at *6 (N.D. Cal. Jan. 27, 2022) (same); *Villalpando v. Exel Direct Inc.*, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016) (same).

1  $185). The negative multiplier will go down further given the additional hours necessary to see

2  this case through to final resolution. Murray Decl. ¶ 29.

3      Plaintiffs' counsel expended over $25,744 in costs. Murray Decl. ¶ 32; Rodriguez Decl. ¶

4  57. These costs include filing and mediation fees, travel and lodging, the cost of administering

5  notice of preliminary collective certification, transcripts, and other costs specifically allocable to

6  this matter. Murray Decl. ¶ 32; Rodriguez Decl. ¶¶ 57-58. These costs were necessary to secure

7  the resolution of this litigation. *See also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166,

8  1177-1178 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel

9  expenses, postage, telephone and fax costs, computerized legal research fees, and mediation

10  expenses are relevant and necessary expenses in a class action litigation). "Reasonable costs

11  and expenses incurred by an attorney who creates or preserves a common fund are reimbursed

12  proportionately by those class members who benefit from the settlement." *In re Media Vision*

13  *Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*,

14  396 U.S. 375, 391-392, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970)).

15      Accordingly, the settlement of this matter for fees ($333,333) and costs ($25,744) for a

16  maximum total of $363,333 is a reasonable resolution of Plaintiffs' claims for attorneys' fees

17  and costs, especially considering that Plaintiffs' attorneys will need to expend additional hours

18  finalizing the Settlement with no additional request for payment.

19                                    **IV.    CONCLUSION**

20      For all of the foregoing reasons, Plaintiffs respectfully request the Court grant this

21  motion and approve the Settlement Agreement by entering the Order submitted herewith.

22

23

24

25

26

1

RESPECTFULLY SUBMITTED AND DATED this 31st day of May, 2024.

2

TERRELL MARSHALL LAW GROUP PLLC

3

*I certify that this memorandum contains 6,580 words,
in compliance with the Court's Order Granting Plaintiffs
leave to file an overlength brief.*

4

5

By: /s/ Jennifer Rust Murray, WSBA #36983

6

Toby J. Marshall, WSBA #32726
Email: tmarshall@terrellmarshall.com

7

Jennifer Rust Murray, WSBA #36983
Email: jmurray@terrellmarshall.com

8

Ryan Tack-Hooper, WSBA #56423
Email: ryan@terrellmarshall.com

9

936 North 34th Street, Suite 300
Seattle, Washington 98103

10

Telephone: (206) 816-6603

11

Camille Fundora Rodriguez, *Admitted Pro Hac Vice*

12

Email: crodriguez@bm.net
Michael J. Anderson, *Admitted Pro Hac Vice*

13

Email: manderson@bm.net
BERGER MONTAGUE PC

14

1818 Market Street, Suite 3600
Philadelphia, PA 19103

15

Telephone: (215) 875-3000

16

17

Alexandra K. Piazza, *Admitted Pro Hac Vice*

18

Email: apiazza@bm.net
BERGER MONTAGUE PC

19

1001 G Street NW, Suite 400 East
Washington, D.C. 20001

20

Telephone: 215-875-3063

21

22

23

24

25

26

Mariyam Hussain, *Admitted Pro Hac Vice*
Email: mhussain@bm.net
BERGER MONTAGUE PC
1720 W. Division Street
Chicago, IL 60622
Telephone: 773-666-4316

*Attorneys for Plaintiffs and the
Proposed Collective and Class*