UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAKOTA ROBERTS; DAWN MARIE HACKER; HEATHER MADSEN,<br><br>Plaintiffs,<br><br>v.<br><br>SIDWELL AIR FREIGHT INC; DHL EXPRESS (USA) INC, d/b/a DHL Express,<br><br>Defendants. | Case No. 3:21-cv-05912<br><br>ORDER GRANTING MOTION FOR APPROVAL OF FLSA SETTLEMENT |

Before the Court is Plaintiffs Dakota Roberts, Dawn Marie Hacker, and Heather Madsen's unopposed Motion for Approval of FLSA Settlement (Dkt. 78). The Court GRANTS the motion for the reasons below.

## I.    BACKGROUND

On December 14, 2021, Plaintiffs Roberts and Hacker filed a class and collective action lawsuit against Defendants Sidwell Air Freight, Inc. and DHL Express (USA), Inc. Dkt. 1. On May 31, 2024, they filed an amended complaint, adding Plaintiff Heather Madsen. Dkt. 77.

Plaintiffs worked as delivery drivers for Sidwell, which provides local delivery services for DHL. Dkt. 77 ¶¶ 24–25. They allege that even though they regularly worked over forty hours

per week, Sidwell and DHL did not pay them for all their overtime hours. *Id.* ¶¶ 62–66. Plaintiffs assert causes of action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (FLSA), the Washington Minimum Wage Act, RCW 49.46.130, and the Washington Wage Rebate Act, RCW 49.52.050, and the Washington Industrial Welfare Act, RCW 49.12. *Id.* ¶¶ 94–130. Plaintiffs brought the case individually and on behalf of a collective, defined as "[a]ll current and former Courier Drivers or delivery drivers who were paid by Defendant Sidwell to perform work on behalf of DHL in the United States during the applicable limitations period." *Id.* ¶ 18.

On November 15, 2022, before this case was assigned to the undersigned judge, U.S. District Judge Benjamin H. Settle granted Plaintiffs' motion to conditionally certify the collective as to Washington opt-in plaintiffs and declined to consider whether to conditionally certify the out-of-state plaintiffs. Dkt. 43. Judge Settle determined that the Court lacked personal jurisdiction over the defendants with respect to the out-of-state opt-in plaintiffs' claims, and thus considered only whether Washington opt-in plaintiffs were similarly situated to Plaintiff Roberts. *Id.* at 18–19. Judge Settle held that they were similarly situated, reasoning that, according to Roberts's credible allegations, "all Sidwell employees are subject to the same working conditions, have the same job descriptions, and are similarly expected to complete all routes for a daily wage, regardless of how long it takes." *Id.* at 19.

On January 26, 2023, Plaintiff Madsen filed a similar FLSA lawsuit against Defendants in the U.S. District Court for the District of Utah on behalf of a national FLSA collective. *Madsen v. Sidwell Air Freight, Inc., et al.*, No. 1:23-cv-00008 (D. Utah). That court conditionally certified a collective of "all potential opt-in plaintiffs who were employed by Sidwell in Utah as against both Sidwell and DHL" and a second collective of "all potential opt-in plaintiffs who were employed by Sidwell in Oregon as against Sidwell." Dkt. 79-3 at 44. The court found it

lacked general jurisdiction over DHL with respect to the FLSA claims of any out-of-state opt-in plaintiffs. *Id.* at 41.

On February 27, 2024, the parties participated in a full-day mediation before a professional mediator. Dkt. 78 at 9; Dkt. 79 ¶ 16. The mediation culminated in a Collective Action Settlement Agreement and Release of Claims (the "settlement"), which the parties finalized in May 2024. Dkt. 79-1.

The settlement includes a payment of $1,000,000, "which shall be the maximum amount Sidwell shall pay to settle the Actions as set forth herein" and "is exclusive of Defendants' attorneys' fees and costs and Sidwell's share of any payroll taxes attributable to the Settlement Awards." Dkt. 79-1 at 3. From the $1,000,000 total award, the settlement allocates a service award of $5,000 to each named plaintiff, settlement administrative costs of up to $17,250, attorney's fees of up to $333,333 (one-third of the total award), and litigation costs up to $30,000. *Id.* The settlement sets out a formula to calculate the settlement award for collective members, awarding each member a base amount of $300 and dividing the remaining award amongst collective members based on the number of weeks worked. *Id.* at 9–10. The settlement allocates a higher share of the remaining award for workweeks in states with applicable state law protections (Washington, Oregon, New Mexico, and Arizona) than for workweeks in states without protections (Utah and Texas). *Id.* at 10.

The settlement includes release provisions for named plaintiffs and members of the collective. Dkt. 79-1 at 4–5.

## II.  DISCUSSION

### A.  Legal Standard

"Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court." *Kerzich v. County of*

*Tuolumne*, 335 F. Supp. 3d 1179, 1183 (E.D. Cal. 2018) (collecting cases); *see Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945); *see also Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015) (noting "FLSA claims may not be settled without approval of either the Secretary of Labor or a district court"); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) ("When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."); *but see Evans v. Centurion Managed Care of Ariz. LLC*, 686 F. Supp. 3d 880, 881–86 (D. Ariz. 2023) (surveying appellate and district court cases and concluding that the FLSA does not require judicial approval of settlement agreements).

The Ninth Circuit has not established criteria for determining whether a FLSA settlement should be approved. *Wonderly v. Youngblood*, Nos. C16-1621, C16-1638, 2022 WL 378262, at *3 (E.D. Cal. Feb. 8, 2022) (citing *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. C13-5456, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016)). "However, district courts in this circuit have applied the widely used standard adopted by the Eleventh Circuit, which looks to whether the settlement is a fair and reasonable resolution of a bona fide dispute." *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1355).

**B.      Final certification of the settlement collective is appropriate.**

As a preliminary matter, "[t]o maintain a collective action under the FLSA a plaintiff must demonstrate that the putative collective action members are similarly situated." *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 470 (E.D. Cal. 2010). "A majority of courts have adopted a two-step approach for determining whether a class is 'similarly situated.'" *Id.* (collecting cases). A district court first determines whether "conditional certification" is warranted for the

purposes of notifying proposed class members of the suit. *Id.* at 471. At this stage, courts consider "the submitted pleadings and affidavits" and apply "a fairly lenient standard." *Id.*

At the second step, the Court decides whether "final certification" is warranted. This step "usually occurs after discovery is complete," but "[e]ven when the parties settle, the court 'must make some final class certification finding before approving a collective action settlement.'" *Id.* (internal citations omitted). The court determines final certification by "weighing such factors as '(1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appeared to be individual to each plaintiff, and (3) fairness and procedural considerations.'" *Id.* (internal citations omitted).

Plaintiffs ask the Court to certify a collective "encompassing all relevant delivery drivers across seven states." Dkt. 78 at 19. Judge Settle previously granted conditional certification to a collective of delivery drivers only in Washington, determining that the court lacked personal jurisdiction over the defendants with respect to claims by drivers in other states. Dkt. 43 at 18–19. At this stage, the Court has "jurisdiction to approve" the settlement for the out-of-state opt-in plaintiffs as well as the Washington opt-in plaintiffs because "the settling defendant[s] ha[ve] voluntarily submitted to personal jurisdiction before the Court for [the] purpose of approval and implementation of the settlement." *Thompson v. Transamerica Life Ins. Co.*, No. 218CV05422CASGJSX, 2020 WL 6145105, at *14 (C.D. Cal. Sept. 16, 2020). The opt-in plaintiffs in Washington and the six other relevant states have similar job descriptions that show they were subject to similar policies and practices, including that drivers receive their pay at a daily rate, regardless of actual hours worked. *See* Dkt. 31-5. The Court finds no material distinctions between the opt-in plaintiffs in terms of their factual and employment settings or their available defenses. Nor do any fairness or procedural questions weigh against final certification. Final certification of the multi-state collective is appropriate.

**C.  The settlement is a fair and reasonable resolution of a bona fide dispute.**

A settlement addresses a bona fide dispute when it "reflect[s] a reasonable compromise over issues . . . that are actually in dispute." *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014) (quoting *Lynn's Food Stores*, 679 F.2d at 1355). "A bona fide dispute exists when there are legitimate questions about 'the existence and extent of Defendant's FLSA liability.'" *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (quoting *Ambrosino v. Home Depot. U.S.A., Inc.*, No. 11cv1319 L(MDD), 2014 WL 1671489, at *1 (S.D. Cal. Apr. 28, 2014)). Here, the parties' opposing positions with respect to whether Defendants owe Plaintiffs overtime pay under the FLSA demonstrate the existence of a bona fide dispute at the time of mediation and settlement. *See* Dkt. 78 at 15, 17–18. The Court finds that the settlement here represents the resolution of a bona fide dispute.

To determine whether the settlement is fair and reasonable, the Court considers:

> (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.

*Selk*, 159 F. Supp. 3d at 1173 (collecting cases). The Court "must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.*

*1.  Plaintiffs' range of possible recovery*

First, the Court considers Plaintiffs' "range of potential recovery to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims." *Id.* at 1174. The settlement "may be acceptable even though it amounts to only a fraction of the potential recovery that might be available . . . at trial." *Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). The Court "must be satisfied

that the amount left on the settlement table is fair and reasonable under the circumstances presented." *Selk*, 159 F. Supp. 3d at 1174.

Here, Plaintiffs estimate each employee could recover a maximum of $7,370 on average for FLSA damages, state law damages, and hours worked off-the-clock. *Id.* at 13. The settlement payments to Plaintiffs are estimated to average $1,500 per person. *Id.* This amount, over 20 percent of the total possible recovery, is reasonable given the risk of non-recovery should Plaintiffs continue to litigate. *See Saleh v. Valbin Corp.*, No. 17-CV-00593-LHK, 2018 WL 6002320, at *3 (N.D. Cal. Nov. 15, 2018) (approving FLSA settlement awarding 18.87 percent of total possible recovery); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving class action settlement awarding plaintiffs 11 to 27 percent of total possible recovery).

### 2. *The stage of the proceedings and extent of discovery completed*

Second, the Court considers whether there has been sufficient progress in this case and with respect to discovery "to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement." *Dudley v. TrueCoverage LLC*, No. CV 18-3760 PA (AGRX), 2019 WL 3099661, at *3 (C.D. Cal. Mar. 22, 2019). The settlement here followed two years of active litigation during which the parties disputed the allegations, jurisdiction, and conditional certification through pleadings and motions practice. Dkt. 78 at 17. The parties also completed extensive discovery: Plaintiffs served and received responses to multiple rounds of written discovery, including 27 interrogatories, 5 requests for admission, and 70 requests for production. *Id.*; Dkt. 79 ¶ 13. Defendants produced thousands of pages in response to these requests. Dkt. 78 at 17; Dkt. 79 ¶ 14. Because the proceedings and discovery have advanced enough to give the parties "sufficient information to make an informed decision about settlement," this factor

weighs in favor of approval. *See Selk*, 159 F. Supp. 3d at 1177 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

### 3. *The seriousness of the litigation risks*

Third, the Court considers whether there is a "significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen*, 306 F.R.D. at 255. Plaintiffs note that Defendants have advanced several arguments in their defense, including "that there is insufficient commonality among the drivers to warrant collective or class treatment," and that Sidwell's "flat 'day rates' include both regular and overtime amounts." Dkt. 78 at 17. The Court agrees that Plaintiffs faced litigation risks because Defendant's defenses may have reduced or prevented recovery.

### 4. *Scope of release provision*

Fourth, "[c]ourts review the scope of any release provision in a FLSA settlement to ensure that class members are not pressured into forfeiting claims, or waiving rights, unrelated to the litigation." *Selk*, 159 F. Supp. 3d at 1178. The settlement provides that members of the collective release claims as follows:

> [F]or the time period from the earlier of the three years prior to the filing of their Opt-In Consent Form or January 1, 2020, through February 27, 2024, whichever is longer, all wage and hour allegations and causes of action asserted in the Operative Complaint against Sidwell and DHL, including, without limitation, all overtime and liquidated damages under the FLSA and related state wage and hour laws.

Dkt. 79-1 at 4. It also provides that named plaintiffs release claims as follows:

> [E]ach Named Plaintiff for the time period from the earlier of the three years prior to the filing of their Opt-In Consent Form or January 1, 2020, through February 27, 2024, whichever is longer, all wage and hour allegations and causes of action asserted in the Operative Complaint against Sidwell and DHL, including, without limitation, all overtime and liquidated damages under the FLSA shall be deemed to have released and forever discharged Releasees from any and all Settlement Collective Released Claims, and, in addition, shall be deemed to have released Releasees from any and all claims, demands, rules or regulations, or any other causes of action of whatever nature, whether known or unknown, or any claim for

costs, fees, interest, or other expenses including attorneys' fees incurred in any matter; or any and all claims for bonuses, commissions or any claims for incentive compensation of any type, whether under common law or policy or contract, and any other federal, state or local human rights, civil rights, wage-hour, whistleblower, pension, or labor laws, rules or regulations, public policy, any and all claims that were asserted or that could have been asserted in the Actions, any claim for breach of contract, contract, or tort laws, or any claim arising under common law, such as claims for malicious prosecution, misrepresentation, defamation, false imprisonment, libel, slander, invasion of privacy, negligence, claims based on theories of strict liability or respondeat superior, infliction of emotional distress, or otherwise, or any other action or grievance against the Releasees, based upon any conduct occurring through the date of execution of this Agreement.

*Id.* at 4–5. These provisions narrow the scope of the release to the relevant period and, for the collective, the factual allegations in the operative complaint against Sidwell and DHL. Although the release by the Named Plaintiffs of a wider swath of employment claims would be overbroad if applied to the collective, *see Ambrosino*, 2014 WL 1671489, at *2, the Court finds it reasonable for the Named Plaintiffs only. These provisions do not weigh against approval of the parties' settlement.

        5.       *Experience and views of counsel and opinion of participating plaintiffs*

Fifth, the Court considers the experience and views of counsel and the opinion of participating plaintiffs. "In determining whether a settlement is fair and reasonable, '[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases.'" *Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017) (quoting *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014)). Counsel is experienced in wage and hour class and collective action litigation. See Dkt. 79 ¶¶ 1–5, 9–10; Dkt. 80 ¶¶ 2–6; Dkt. 80-1 at 4–5. Plaintiffs assert that "[b]ased on counsels' experience and with the agreement of the Named Plaintiffs, this is an excellent result in light of the inherent risks of any litigation no matter how strong the case." Dkt. 78 at 18. Nothing in the record calls into

question their experience or judgment. Additionally, Plaintiffs have signed the settlement agreement. This factor weighs in favor of approval.

### 6. *Possibility of fraud or collusion*

Finally, the Court "may look for indications that the plaintiffs' counsel 'allowed the pursuit of their own self-interests and that of certain class members to infect the negotiation,' or for 'evidence of more "subtle signs" of collusion, such as "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded."'" *Dudley*, 2019 WL 3099661, at *5 (quoting *Selk*, 159 F. Supp. 3d at 1180).

The Court finds no evidence that the settlement resulted from, or was influenced by, fraud or collusion. As Plaintiffs note, the settlement is the "result of arms-length negotiations assisted by a professional mediator." Dkt. 78 at 18–19; *see also Selk*, 159 F. Supp. 3d at 1179–80; *Dudley*, 2019 WL 3099661, at *5. Although counsel is receiving a substantial fee, collective members are "also receiving a significant monetary benefit." *Slezak*, 2017 WL 2688224, at *5.

### D. Notice Procedure

#### 1. *Administrative Procedure*

Under the settlement, the parties request that the Court appoint Simpluris as the Settlement Administrator to provide notice, track claims, and distribute the settlement payments. *See* Dkt. 78 at 20; Dkt. 79-1 at 4–5, 8–12. The Court appoints Simpluris as the Settlement Administrator subject to its agreement. Simpluris will be granted reasonable access to Defendant's record to perform its duties as Settlement Administrator. Simpluris is to complete its duties on a contract for costs not to exceed $17,250. *See* Dkt. 79-1 at 4.

The parties propose sending notice to all potential collective members in a form attached to the settlement as Exhibit B (Dkt. 79-1 at 27–30), along with an opt-in consent form attached

as Exhibit C (Dkt. 79-1 at 32). The Court approves the proposed notice form and directs Simpluris to administer the settlement pursuant to the terms of the agreement.

### E.  Service Award

The Court has the discretion to award an incentive payment to named plaintiffs in a FLSA collective action to compensate them for work done on behalf of the class. *Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 2090034, at *3 (N.D. Cal. May 19, 2014). "In reviewing whether an incentive award is appropriate, the court should consider, among other things, 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Selk*, 159 F. Supp. 3d at 1181 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). "Courts will scrutinize large incentive payments to ensure that the prospect of a large incentive did not encourage a named plaintiff 'to accept a suboptimal settlement at the expense of the class members whose interests they are appointed to guard.'" *Id.* (quoting *Staton*, 327 F.3d at 977) (cleaned up).

Named Plaintiffs each seek an incentive award of $5,000. Dkt. 78 at 21. Plaintiffs' counsel declares that Plaintiffs have supported this case and the companion Utah case by assisting with complaint drafting, responding to discovery, and participating in settlement negotiations that led to the settlement proposed here. Dkt. 79 ¶ 23. As Plaintiffs contend, the requested award is consistent with the amount awarded in comparable cases in this District and others in the Ninth Circuit. Dkt. 78 at 21 (citing *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329–30, n.9 (W.D. Wash. 2009) (approving $7,500 service awards and collecting decisions approving awards ranging from $5,000 to $40,000)); *see also Selk*, 159 F. Supp. 3d at 1181 (awarding $5,000 incentive award to named plaintiff in FLSA action). The Court finds that the requested incentive awards are reasonable and appropriate given "Plaintiffs' involvement in

this action, the payments that collective members will receive, and the fact that the [incentive] awards will not diminish those payments." *See Dudley*, 2019 WL 3099661, at *6.

### F. Attorney's Fees and Costs

#### 1. Attorney's Fees

In an FLSA action, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Dudley*, 2019 WL 3099661, at *6 (quoting *Selk*, 159 F. Supp. 3d at 1180). "Typically, attorneys' fees under the FLSA are determined using the lodestar method . . . . Lodestar amounts are presumed to be reasonable." *Id.* (quoting *Kerzich*, 335 F. Supp. at 1185–86 (collecting cases)).

Plaintiffs' counsel seek $333,333 (one-third of the total settlement) for attorney's fees and a maximum of $30,000 in litigation costs.[1] Dkt. 78 at 24; Dkt. 79-1 at 3. Plaintiffs assert that the requested fees amount to only a fraction of their total lodestar calculation of $1,014,439.50, reflecting a negative multiplier of 0.33. Dkt. 78 at 23. Counsel's lodestar calculation is based on a lodestar of $170,107.50 for a combined total of 497 hours of work performed by Terrell Marshall on the Washington case, and a lodestar of $844,332 for 1,310.9 hours performed by Berger Montague on the Washington and Utah cases. Dkt. 79 at 28; Dkt. 80 at 35–36. Terrell Marshall attorneys and staff members include Toby Marshall, a founding member of Terrell Marshall whose hourly rate is $575, Jennifer Rust, a founding member whose hourly rate is $550, and Ryan Tack-Hooper, a member whose hourly rate is $500, and three paralegals and legal assistants, whose hourly rates range from $125 to $195. Dkt. 79 at 28. Berger Montague's

---

[1] Costs are currently estimated to be $25,744.

attorneys and staff members include Camille Fundora Rodriguez, a shareholder whose hourly rate is $875, Alexandra Piazza, a shareholder whose hourly rate is $830, Mariyam Hussain, a senior counsel whose hourly rate is $750, Michael Anderson, an associate whose hourly rate is $595, Deanna Kemler, PhD, a former damages analyst, whose hourly rate is $425, a paralegal whose hourly rate is $375, and three legal project analysts whose hourly rates range from $280 to $325. Dkt. 80 at 35. At reduced hourly rates to match those in Washington, Berger Montague's lodestar would be $473,604.50, Dkt. 80 at 39, resulting in a total lodestar of $652,802, reflecting a negative multiplier of 0.51.

The Court finds that this lodestar calculation is reasonable. That the requested fee is far less than the lodestar amount supports approval. *See Dudley*, 2019 WL 3099661, at *6 (approving requested fees that were 27.44 percent of lodestar amount); *Goodwin v. Citywide Home Loans, Inc.*, No. SACV 14-866-JLS (JCGx), 2015 WL 12868143, at *4 (C.D. Cal. Nov. 2, 2015) (noting that requested fees of 60 percent of the lodestar amount suggested reasonableness). And courts often approve fee awards reflecting positive multipliers. *See See Vizcaino*, 290 F.3d at 1051 n. 6 (finding multipliers ranging from one to four are frequently applied in common fund cases).

The Ninth Circuit does "not require courts employing the lodestar method to perform a 'crosscheck' using the percentage method." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 571 (9th Cir. 2019). "[T]he lodestar method yields a fee that is presumptively reasonable" and "[t]he percentage method is merely a shortcut to be used 'in lieu of the often more time-consuming task of calculating the lodestar,' but only if 'the benefit to the class is easily quantified.'" *Id.* (first quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010), and then quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)).

But the Court finds the requested fee reasonable even under the percentage method, even though the requested fee, 33 percent of the recovery amount, exceeds the 25 percent benchmark used in this circuit to define a reasonable fee award. *See In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("'[I]n common fund cases, the 'benchmark' award is 25 percent of the recovery obtained,' with 20–30% as the usual range."). In evaluating the percentage-of-recovery, the Court must "take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

Here, counsel have spent two and a half years and over 1,800 hours litigating this case on a contingency basis. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005) ("Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award."). Counsel have demonstrated their experience in class and collective wage and hour litigation, and the legal issues in this matter presented significant risks of non-recovery for Plaintiffs. *See Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, *10 (C.D. Cal. Nov. 18, 2014) (approving one-third fee in class action, reasoning that "the considerable risk in this case due to the uncertain legal terrain, coupled with Counsel's contingency fee arrangement, weigh in favor of an increase from the benchmark rate"). Other district courts in the Ninth Circuit have approved awards of one-third of the recovery amount in other wage and hour suits. *Id.* (collecting cases). Here, one-third of the recovery amount compensates counsel for just half of the hours they spent on the case, calculated at a reasonable local rate. The Court approves the requested fee of $333,333.

   2. *Costs*

With respect to the litigation expenses, counsel request costs up to $30,000. Dkt. 79-1 at 3. Counsel estimate that costs currently amount to $25,744. Dkt. 78 at 24. The Court has reviewed the declarations and supporting documentation and has determined that the costs are reasonable, considering this litigation has been underway for approximately two and a half years.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion for approval of FLSA settlement (Dkt. 78) and APPROVES the settlement. The Court further ORDERS:

- The Court certifies an FLSA Collective for settlement purposes pursuant to 29 U.S.C.§ 216(b) defined as "all current and former delivery drivers or couriers operating vehicles weighing less than 10,000 pounds who were paid by Sidwell to deliver packages pursuant to Sidwell's agreement with DHL in the United States during the periods of the earlier of the three years prior to the filing of their Opt-In Consent Form or January 1, 2020, through February 27, 2024";

- Service awards of $5,000 for each of the three named plaintiffs ($15,000 total) are approved;

- Payments of Plaintiffs' attorney's fees in the amount of $333,333 and up to $30,000 in costs are approved;

- Simpluris is appointed as the Settlement Administrator and administration costs not to exceed $17,240 are approved;

- The parties' proposed Notice and Claim Form shall be sent to all Proposed Settlement Collective Members as set forth in the Settlement Agreement;

- In accordance with the terms of the Settlement Agreement, this action is DISMISSED with prejudice; and

- The Court will retain jurisdiction over this action for enforcement and implementation of the Settlement Agreement.

Dated this 5th day of August, 2024.

Tiffany M. Cartwright
United States District Judge

- 16